GUMBERG v. TREUSCH.

1. DEBTOR AND CREDITOR—FRAUDULENT SALE—CONSIDERATION.

Knowledge, either actual or constructive, by a creditor, of an intention on the part of his debtor to defeat other creditors by a transfer to him, is sufficient to avoid the transaction, where part of the consideration is cash paid to the debtor, although the other portion is the discharge of the transferee's claim.

2. SAME—EVIDENCE.

It is competent, upon the question whether all of the goods transferred by a debtor to another were entered upon the former's books, to show a removal of goods during the noon hour, in the absence of the bookkeeper, in connection with his evidence that he does not remember of any instance when goods that had been ordered in the forenoon were not sent until after he came back from dinner, nor of any instance of finding a memorandum of goods to be entered up when he came back from dinner.

3. GARNISHMENT—MISTAKE OF FACT.

An item of indebtedness arising out of an admitted mistake in bookkeeping, which constitutes a present legal demand in favor of the creditor, may be reached by garnishment.

Error to Kent; Grove, J. Submitted June 10, 1896. Decided July 28, 1896.

Garnishment proceedings by John Gumberg and another against Morris H. Treusch and another, as garnishee defendants of Jacob Lustig. From a judgment for defendants, plaintiffs bring error. Reversed.

*Rood & Ryan*, for appellants.

*Fletcher & Wanty*, for appellees.

MONTGOMERY, J. This case has once been before the court, and is reported in 103 Mich., at page 543, to which

reference is made for a general statement of the facts. On the second trial defendants prevailed, and plaintiffs bring error. The assignments of error relate to the charge of the court and the refusal to give certain requests of plaintiffs and the granting of certain requests of the defendants.

1. The testimony on the last trial tended to show that, for the last of the goods received by the Treusches from Lustig, cash to the amount of $1,222.19 was paid, in addition to crediting Lustig with a portion of the purchase price on the alleged indebtedness from Lustig to the Treusches. The plaintiffs requested an instruction as follows:

"The undisputed evidence shows a sale, during a short time prior to the failure, from Lustig to the Treusches, of goods, and about one-half cash paid Lustig by the Treusches therefor, viz., $1,222, on the 22d day of June, 1891; and if you find from all the evidence in the case that either of the Treusches had such notice as would put any ordinarily prudent man on inquiry, that Lustig intended to defraud his creditors by these sales to the Treusches, plaintiffs must recover."

This request was refused, and error is alleged upon the refusal. Counsel for defendants contend that the instruction by the court upon this subject was, however, sufficiently favorable. The court did charge the jury, in effect, that, to warrant a finding that the title which the Treusches acquired to the goods in question was void against creditors, the jury must find that Lustig's purpose was fraudulent, and that the Treusches had knowledge of that fraudulent intent, or had knowledge of such facts surrounding the transaction as would have been sufficient to put an ordinarily prudent man upon inquiry as to Lustig's intent; but added:

"And even in a case where they might have had knowledge of the condition of Lustig's affairs, that he was insolvent, and in failing circumstances, they would have the right, if they knew that, to secure their own debt."

The court further stated:

"He [the creditor] may also be aware that the effect of the payment to him will be to hinder and delay, or even defeat, other creditors in the collection of their just claims, and yet such knowledge will not avoid the sale made to pay the honest antecedent indebtedness."

And again:

" A creditor may purchase in order to secure a *bona fide* indebtedness, and he is not affected by a fraudulent intent on the part of his grantor in which he did not participate. The law permits a debtor to prefer a creditor either by the way of payment or security, where such security is disassociated with a common-law assignment. If such a conveyance is made to defraud creditors, it must be because the debt is fictitious in whole or in part, and so intended for a mere cover. But, if the debt is not fictitious, the creditor has a right to take goods in payment of it, even though he knows that the effect will be to cut off the ability of his debtor to pay others."

We think the learned circuit judge failed, through inadvertence, to cover the ground stated in plaintiffs' request, above quoted. There is a distinction, well established by authority, between the case of a purchase by a creditor from a debtor in failing circumstances of goods or property received in satisfaction of an indebtedness, and a purchase for a money consideration passing into the hands of a debtor. In the former case, knowledge of a purpose to defeat creditors is not necessarily sufficient to avoid the transaction, if the indebtedness is honest, and no more property is taken than is sufficient to satisfy such indebtedness. The transaction, in such a case, amounts to nothing more than a preference of one creditor over others, which the debtor has the right to make. But a sale of property, by which the whole or part of the purchase price finds its way into the hands of a failing debtor, if made with intent to defraud creditors, and with knowledge in the purchaser that such is the intent, is none the less fraudulent, and

the purchaser is none the less liable as a participator in the fraud, because there is included in the transaction a cancellation of an indebtedness owing to him. *Hough* v. *Dickinson,* 58 Mich. 89; *Bedford* v. *Penny,* 58 Mich. 428. While the learned circuit judge evidently had this distinction in mind, we think he failed to express it to the jury, and that the charge, as given, tended to mislead.

The plaintiffs, on the trial, also offered testimony of one Orson Stebbins, who was Lustig's bookkeeper at the time of these transactions, and he testified that all the entries of goods sold to the Treusches appearing upon the books of Lustig were in his (Stebbins') handwriting; that he did not remember of any instance when goods that had been ordered in the forenoon were not sent until after he came back from dinner; nor did he remember of any instance, after coming back from dinner, of finding a memorandum from Mr. Lustig of any goods to be entered up which had gone out during the noon hour. The plaintiffs then called a Mr. Kelly, a drayman, who testified that during the noon hour goods were taken by him from Lustig's store, and conveyed to the Treusches; that some of the goods taken consisted of cases of cigars that were sealed and strapped when he (Kelly) went into Lustig's store to get them, and that Mr. Lustig would cut the straps and pull them out, and that these sealed and strapped cases were in the same condition as they were when put in from the depot. Stebbins, the bookkeeper, testified that an account of the goods received did not go onto the books until they were unpacked. It appears that Lustig's books and Treusch's books correspond in the account of the amount of goods received by the Treusches from Lustig. The contention of the plaintiffs was, as to the testimony referred to, that goods were taken from Lustig's to Treusch's during the noon hour, of which no account was given to Lustig's bookkeeper, and which did not, therefore, appear upon Lustig's books or Treusch's books, and which the jury were consequently justified in

inferring were not paid for. The circuit judge refused to submit this question to the jury, and, on the contrary, charged that there was no evidence to support the claim that any goods were taken from Lustig's store that were not in fact entered upon the books of the Treusches. We think this testimony should have been submitted to the jury. It is true, the defendants offered testimony tending to dispute that offered by the plaintiffs on this point, and it might also be said that the testimony offered by plaintiffs is not in itself of great force; but we are not able to agree with the circuit judge that there was not enough of it to go to the jury.

Another item of minor importance is an alleged indebtedness of $28 from the Treusches to Lustig, arising out of a mistake of bookkeeping. It appears that in an entry, in extending the credit for 2,100 cigars at the price of $28 per 1,000, the extension was for the price of 1,100 cigars only, showing a mistake in favor of the Treusches of $28. This is within the affidavit, and we see no reason why the plaintiffs should not recover it. The evidence shows very clearly that it was a mistake of fact, and that the goods were actually received by the Treusches at a stipulated price, and that Lustig was not paid for them. The circuit judge seemed to be of the opinion that it was covered by the settlement between the parties, but we think it was evident that the parties never intended to settle for this mistake; that the error was not discovered. There was nothing to bar a recovery by Lustig.

The judgment will be reversed, and a new trial ordered.

LONG, C. J., HOOKER and MOORE, JJ., concurred. GRANT, J., did not sit.