SPENCER v. MILLER.

1. APPEAL AND ERROR—NONAPPEALING PARTIES—EQUITY—HEARING DE NOVO.

Adverse parties who fail to appeal from decision of trial court in a chancery case may not have decree modified in their favor on appeal; decree must stand as to them, even though Supreme Court does hear case de novo.

2. FRAUDULENT CONVEYANCES—KNOWLEDGE OF GRANTEE—INTENT.

Knowledge of facts sufficient to put an ordinarily prudent man on inquiry will affect the good faith of one who takes a transfer of property from an embarrassed owner, actual participation in the fraudulent intent of the latter not being necessary to defeat the conveyance.

3. SAME—SUFFICIENCY OF CONSIDERATION.

Exchange of 80-acre unimproved, sandy, barren, hilly farm which had not been cultivated for 16 to 18 years, against which taxes of $297 had accrued in over 12 years, $200 in cash, $600 in notes and assumption of certain back taxes, for store building which cost $6,550 and had monthly rental value of $50 held, not a fair consideration within meaning of fraudulent conveyance act (3 Comp. Laws 1929, § 13392 et seq.).

4. Same—Bona Fide Grantee—Grantor's Financial Condition— Lis Pendens—Consideration—Payment of Taxes.

That ultimate grantee of property had knowledge of facts at least sufficient to put an ordinarily prudent man on inquiry as to whether or not conveyances from mother to daughter and from latter to himself, an experienced person in transactions involving title to real estate, were in fraud of creditors of mother, the real owner, hence, making purchaser not a *bona fide* one, *held*, demonstrated by fact that he knew of embarrassed financial condition of mother, undischarged *lis pendens* against property, that consideration was not a fair one and grantee failed to pay taxes for 18 months after conveyance to him in question (3 Comp. Laws 1929, §§ 13392–13395).

5. Evidence—Worth of Real Estate—Rentals.

While income from rentals is not always a safe basis to judge the value of real estate, it is an important element in arriving at its true worth.

6. Appeal and Error—Questions Reviewable—Propriety of Lien for Defeated Litigant.

In suit to set aside conveyances to defendant grantees as in fraud of creditors of real owners, in which defendants were held not to be *bona fide* purchasers, propriety of lien given such purchasers on property as attorney fee and for moneys expended by them is not reviewed in absence of objection by plaintiff or argument thereon in his briefs.

Appeal from Macomb; Spier (James E.), J. Submitted October 7, 1936. (Docket No. 45, Calendar No. 38,960.) Decided March 2, 1937.

Bill by Ulrich Lumber & Coal Company, a Michigan corporation, against Florence LaGary, Blanche Loiselle, Louise Miller and Daniel Miller to have certain deeds declared null and void, for an injunction, a receiver and to have deeds executed. Cross-bill by defendants Miller for money damages and to have a sheriff's deed declared null and void. John T. Spencer, receiver of the estate of Florence La Gary Loiselle, bankrupt, intervened as party plain-

tiff. From decree for plaintiff, defendants Miller appeal. John T. Spencer, trustee of the estate of Florence LaGary Loiselle, substituted as party plaintiff in place of Ulrich Lumber & Coal Company. Affirmed.

*Hugh Neale* and *Lewis Daniels,* for plaintiff.

*John E. Merrill,* for defendants Miller.

BUSHNELL, J. Florence LaGary, whose full and correct name is Florence LaGary Loiselle, entered into an agreement on July 31, 1930, with John Roth, a building contractor, for the erection of a store and flat on her property in Macomb county at an agreed price of $6,550. Roth, having recorded a mechanic's lien for the unpaid moneys due upon the building contract, filed a bill to foreclose the claimed lien on February 16, 1931. Upon trial of the foreclosure issue, the court in an opinion filed May 7, 1932, held that Roth had lost his lien rights because of his failure to observe certain statutory requirements and an order was entered October 7, 1933, transferring the cause to the law side of the court.

Roth afterwards assigned his claim to plaintiff Ulrich Lumber & Coal Company who secured a judgment against Florence LaGary in the sum of $5,425.38 on November 9, 1933. Execution was issued and levy made, resulting in a sale of the premises by the sheriff to the judgment creditor on January 9, 1934, the certificate of sale being recorded the next day.

Five days after the filing of the court's opinion in the foreclosure action, Florence LaGary conveyed the property in question to her daughter, Blanche Loiselle, by quitclaim deed dated May 12, 1932.

Blanche advertised the property for sale during the month of October, 1933, which resulted in an exchange for an 80-acre unimproved farm in Barry county, and the additional consideration of $200 in cash, $600 more payable in monthly instalments of $50 each and six months' occupancy of the Macomb county property without any rental payments therefor, to her grantees, defendants Miller and wife.

By bill in equity, filed March 16, 1935, Ulrich Lumber & Coal Company asked to have the deeds from LaGary to Loiselle and from the latter to the Millers vacated and set aside as being in fraud of the claim of plaintiff lumber company, who was Roth's assignee. Plaintiff prayed that its purchase of the Macomb property at the execution sale be decreed valid and that it be placed in possession of the premises.

By cross-bill, defendants Miller sought relief by way of money damages, alleging plaintiff's interference with their right to sell the Macomb property and defendants prayed that the recorded *lis pendens* be removed.

During the pendency of this action, Florence LaGary Loiselle having filed a voluntary petition in bankruptcy, John T. Spencer, her receiver, was permitted to intervene as plaintiff.

Subsequent to the decree, Spencer was appointed trustee in bankruptcy of the Florence LaGary Loiselle estate and is now the sole party plaintiff.

Since neither Miss Loiselle nor her mother have appealed, the decree of the trial court must stand as to them even though the cause is heard *de novo*. *Wernick* v. *Wayne Circuit Judge,* 234 Mich. 224.

Were the Millers *bona fide* purchasers of the Macomb property?

The testimony shows that Miller, who was a builder and contractor, said:

"I have dealt in exchanges and purchases of property considerably, and have examined abstracts and made deeds. * * * I bought the property in 1933. Did not have the abstract brought down to date, but made penciled minutes of it."

The following questions and their answers by defendant Miller are illuminating:

"*Q.* Now, after the examination of the abstract, did you talk to Mr. Ulrich about this property at all?

"*A.* I thought he had no interest in it until this suit was brought, and then I called him up.

"*Q.* Who advised you about the title?

"*A.* I think after I consulted with my attorney I took my own judgment.

"*Q.* You used your own judgment?

"*A.* Yes, I usually do.

"*Q.* What was your conclusion as to the title of this property?

"*A.* According to my attorney, there was a *lis pendens* pending and after that had been decreed there was no lien on that thing, there was no lien on the property, that that would dispose of the *lis pendens*.

"*Q.* Did your attorney advise you at that time it was possible to appeal that opinion?

"*A.* No. The opinion of the court was something like this, that it didn't apply as a lien on the property, that there was no lien on the property, but there could be actions begun in law, something to that effect. I can't just recall.

"*Q.* Did you ever make any effort to discharge the *lis pendens* yourself?

"*A.* No, because my attorney advised me that the rendering of that opinion,—well, I can't express

it—it would really nullify the *lis pendens* because
that is what the *lis pendens* was.

"*Q.* You knew there was a *lis pendens* on the
property when you bought it?

"*A.* I did.

"*Q.* You didn't confer with any parties with re-
gard to that *lis pendens?*

"*A.* Not after that opinion was rendered. If it
hadn't been for that opinion, I wouldn't have bought
the property.

"*Q.* Did you ever talk to Mr. J. T. Allen about
that?

"*A.* Well, I might have. I wouldn't say yes or
no. I have collected rents from June, 1934, every
month and have my records at home. The coal bills,
water bills, repairs and insurance came out of the
rent. $25 and $35 or a total of $60 in the winter,
and $5 off in the summer. I would say that I had
collected $350 or $400. That is just a guess. Be-
sides I paid out a commission on the transaction to
Mr. Allen, I believe, of $40."

At the time of the conveyance to him, Miller was
aware of the unpaid balance then due from Florence
LaGary to the Ulrich Lumber & Coal Company and
he also knew that by the decision of the circuit
court, the way had been cleared for a suit at law
to collect this unpaid amount. No taxes were ever
paid by Miller on the Macomb property; he ex-
plained on cross-examination that he did not know
why they had not been paid; that perhaps it was
because he did not have sufficient funds at the time.
However, Joseph T. Allen, a real estate dealer, tes-
tified that two months after he closed the LaGary
Loiselle transaction, Miller bought other property
from him, paying part cash on a $3,950 purchase
price and a short time later, bought another piece
of real estate.

Miller disclaimed knowing Florence LaGary until some months after the exchange of properties with Blanche Loiselle although Florence had been working in the office of Allen at the time both these questioned transactions took place. That he was subsequently interested in her financial straits cannot be disputed, in view of his telephone conversation with plaintiff's attorney, Mr. Daniels, in which Miller informed Daniels that defendant LaGary was going into voluntary bankruptcy. In this conversation, he suggested that Daniels attempt a settlement of the law judgment against Florence, in order that the title might be cleared and the matter closed. Miller offered no objection to questions regarding this conversation, but stated that he does not recall from whom this information was received. Blanche testified that the Macomb property was transferred to her in satisfaction of some $1,800 she had loaned her mother in various amounts from time to time and that her only reason for disposing of the property during an unfavorable market was because of her need for ready cash. That need, however, was not described at the trial, although efforts were made to bring it out. It is undisputed that the only cash she received at the time was $200.

The trial court set aside the conveyance of Florence LaGary to her daughter Blanche on the grounds of fraud, and held that the conveyance of Blanche to Miller, was, in effect, a transfer from Florence LaGary to Miller. The court also held that although there was not enough evidence to determine that Miller was guilty of fraud, there were indications that he had been put upon sufficient notice to preclude him from being a *bona fide* purchaser and therefore the conveyance to him would also be set aside.

It is not necessary that the grantee be an actual party to the fraud in order that a conveyance may be set aside as fraudulent. In *L. Starks Co.* v. *Eppink,* 185 Mich. 233, 243, we said:

"The rule of law has been repeatedly stated by this court to be as follows:

" 'Such a knowledge of facts as will put an ordinarily prudent man on inquiry will affect the good faith of one who takes a transfer of property from an embarrassed owner. Actual participation in the fraudulent intent of the latter is not necessary to defeat the transfer.' *Hough* v. *Dickinson* (syllabus), 58 Mich. 89.

"In *Bedford* v. *Penny,* 58 Mich. 424, 428, this court held that actual participation by a purchaser in the fraudulent intent with which one makes a sale to defraud his creditors is not a necessary condition to its avoidance; if the purchaser is not a creditor, it is enough that he knows what would put a prudent man upon inquiry as to the motive of the sale. See, also, *Jordan* v. *White,* 38 Mich. 253; *Allen* v. *Stingel,* 95 Mich. 195; *Gumberg* v. *Treusch,* 110 Mich. 451."

At the time of conveyance of the Macomb property to Miller, the latter had knowledge of facts sufficient to put an ordinarily prudent man on inquiry.

He knew, or should have known, when he was negotiating with Blanche Loiselle, that a *lis pendens* had been filed against the Macomb property. The opinion of the circuit court dismissing the mechanic's lien and permitting a transfer of the cause to the law side of the court was not in such language as to allow an ordinarily prudent man to believe that a transfer of the property could be accomplished without hindering, defrauding, or delaying creditors. Miller's failure to pay accrued taxes on the property for 18 months and his explanation of

his failure to do so seems to indicate that he did not believe the conveyance would withstand a legal test. It is unbelievable that Miller could negotiate through Joseph T. Allen, in whose office Florence LaGary was working at the time, without becoming aware of defendant LaGary's prior connection with the property. Miller's statements that he was not acquainted with Florence until some months after the exchange with Blanche are beyond credence. Throughout the negotiations there was too great a reluctance on the part of Miller to investigate after he knew or should have known that the Macomb property could not be conveyed without injuring the creditors of the real owner, Florence LaGary.

The consideration moving from Miller to Blanche Loiselle also challenges attention. Witness Kramer, who testified for the plaintiff, placed the value of the Macomb property during the years of 1932 and 1933 at $5,000. The building had cost $6,550. Allen, who testified for defendants, was the only other witness who discussed the value of the Macomb property, but he did not place a money valuation thereon. The rental value of the proprety was considered to be $50 per month at the time of the transaction and "while income from rentals is not always a safe basis to judge the value of real estate, it is an important element in arriving at its true worth." *Ritter* v. *Seestedt*, 212 Mich. 208. Real estate values were low in those years, but the market conditions would affect the value of the Barry county land as well as the Macomb property.

There is little doubt that the farm was not worth $1,600, the valuation placed thereon by Miller. The evidence shows that the land, which is located in Yankee Springs township, Barry county, Michigan, had no buildings on it, that its soil was sandy and

barren, that it was hilly, contained a couple of ravines and had not been cultivated for 16 to 18 years. Accrued back taxes amounted to $297, no payments having been made thereon since 1921. In addition to the farm, Blanche Loiselle received $200 in cash and $600 in notes and assumed certain back taxes. Without attempting to determine the actual value of the farm, it appears that the consideration the grantor received for the more desirable Macomb property was not fair within the test given in the following authority.

Speaking of fraudulent conveyances, in *Hartford Accident & Indemnity Co.* v. *Jirasek,* 254 Mich. 131, 139, this court said:

"Whether or not it is fraudulent should be determined in the light of the provisions of the uniform fraudulent conveyance act (3 Comp. Laws 1929, § 13392, *et seq.*) which provides:

" ' "Creditor" is a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent. "Debt" includes any legal liability, whether matured or unmatured, liquidated, absolute, fixed or contingent. (3 Comp. Laws 1929, § 13392.)

" 'A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured. * * * (3 Comp. Laws 1929, § 13393.)

" 'Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without fair consideration.' (3 Comp. Laws 1929, § 13395.) "

Section 13394, 3 Comp. Laws 1929, states:

"Fair consideration is given for property, or obligation:

"(a) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

"(b) When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property or obligation obtained."

That Florence LaGary was insolvent at the time of both transactions is indicated by her testimony that she had no other property and that she became a bankrupt in order to get rid of the judgment.

Because of Miller's knowledge of sufficient facts to put him on inquiry, together with the lack of fair consideration, the Millers were not *bona fide* purchasers and the conveyance from Blanche Loiselle to them was properly set aside.

Defendants Miller were given a lien upon the Macomb property of $339.87 as attorney's fee and for moneys expended by them. Plaintiff neither objects to this nor argues the question of its propriety in his briefs.

The decree is affirmed, with costs to appellee.

FEAD, C. J., and NORTH and SHARPE, JJ., concurred with BUSHNELL, J. WIEST and BUTZEL, JJ., concurred in the result. TOY, J., took no part in this decision. POTTER, J., did not sit.