THOMAS v STATE MORTGAGE, INC

Docket No. 106174. Submitted December 7, 1988, at Grand Rapids. Decided March 21, 1989. Leave to appeal applied for.

In 1985, Ruth Larkin invested a total of $20,000 with A. J. Obie & Associates, receiving confirmations of her investments and thereafter receiving monthly interest payments on those investments. The monthly interest payments ceased in the summer of 1986. In August, 1986, Larkin saw a television broadcast which indicated that A. J. Obie and Diamond Mortgage Corporation had filed for bankruptcy. As a result, Larkin contacted the A. J. Obie office, speaking eventually to a secretary who, in response to Larkin's request for the return of her investment, sent Larkin a mortgage and promissory note executed by Delbert and Judith Thomas and Dawn Decatur in favor of State Mortgage, Inc., an affiliate of A. J. Obie and Diamond Mortgage, which had been assigned by State Mortgage to Larkin. The mortgage and promissory note in the face amount of $19,000 had been executed by the Thomases and Decatur on March 7, 1986. They did not receive any money at that time, but were told that they would receive the proceeds represented by the note within fifteen business days and the mortgage would not be recorded until the proceeds of the loan had been disbursed. The Thomases and Decatur never received the proceeds of the loan despite numerous attempts to secure the same. In March, 1987, the Thomases and Decatur brought in Arenac Circuit Court an action to quiet title, seeking to have the mortgage and assignment of the mortgage declared null and void on the basis of fraud and lack of consideration. State Mortgage did not answer the complaint. Larkin answered and counterclaimed for foreclosure of the mortgage, claiming that she was a holder in due course of the note. After hearing the testimony of the parties, the trial court, Carl L. Horn, J., held that Larkin was

REFERENCES

Am Jur 2d, Bills and Notes §§ 397 et seq.

What constitutes taking instrument in good faith, and without notice of infirmities or defenses, to support holder-in-due-course statue, under UCC sec. 3-302. 36 ALR4th 212.

not a holder in due course and ordered that the mortgage and note be declared null and void. Larkin appealed.

The Court of Appeals *held:*

1. A holder in due course under the provisions of the Uniform Commercial Code is a holder who takes an instrument for value, in good faith and without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

2. Larkin took the note for value since it was in payment of her antecedent claim.

3. The fact that Larkin was sent the assigned mortgage and note instead of the requested return of her money does not establish a lack of good faith on her part because she had not bargained for the assignment of these instruments.

4. The record failed to establish that Larkin was aware at the time of the assignment of facts indicating that the note was past due. Larkin's knowledge of the financial difficulties of A. J. Obie and Diamond Mortgage was not sufficient to put her on notice that the note and mortgage had been secured by fraud or that plaintiffs had never received the proceeds.

Reversed and remanded for further proceedings.

1. BILLS, NOTES AND CHECKS — NEGOTIABLE INSTRUMENTS — HOLDER IN DUE COURSE — VALUE — UNIFORM COMMERCIAL CODE.

A holder in due course of a negotiable instrument subject to the provisions of the Uniform Commercial Code is a holder who takes the instrument for value, in good faith, and without notice that the instrument is overdue or has been dishonored or of any defense against or claim to it on the part of any person; a holder takes the instrument for value when he takes the instrument in payment of or as security for an antecedent claim against any person whether or not the claim is due (MCL 440.3302[1], 440.3303; MSA 19.3302[1], 19.3303).

2. BILLS, NOTES AND CHECKS — NEGOTIABLE INSTRUMENTS — HOLDER IN DUE COURSE — NOTICE — UNIFORM COMMERCIAL CODE.

Knowledge by a holder of a negotiable instrument subject to the provisions of the Uniform Commercial Code that the party from whom the instrument was received is in financial difficulties is not by itself sufficient to amount to notice of the possibility that there exists a defense against the instrument on the part of another such as will prevent the holder from becoming a holder in due course (MCL 440.3302[1]; MSA 19.3302[1]).

*Ronald M. Bergeron,* for plaintiff.

*Sikkenga, Prince, Barecki & Nicholas* (by *Clifford W. Prince*), for defendant.

Before: DOCTOROFF, P.J., and SAWYER and R. J. JASON,* JJ.

PER CURIAM. Defendant Ruth Larkin appeals from an order of the trial court quieting title to plaintiffs' property and voiding a mortgage held by defendant on plaintiffs' house. We reverse.

This case arises out of the bankruptcy of A. J. Obie & Associates, Inc., and Diamond Mortgage Corporation in 1986. Defendant Larkin invested a total of $20,000 with A. J. Obie during 1985 in two separate transactions, the first involving an investment of $12,000 and the second involving $8,000. Defendant Larkin received monthly interest checks on her investment.

In May, 1986, defendant Larkin decided to withdraw her money to buy a car for her grandson's graduation. She was informed by an agent of A. J. Obie that she would incur a $500 penalty if she withdrew her money at that time. Sometime that summer she stopped receiving her interest payments. In August, 1986, defendant Larkin saw a television news broadcast that indicated that A. J. Obie and Diamond Mortgage Corporation had filed for bankruptcy. As a result, she attempted to contact the A. J. Obie office repeatedly. She eventually spoke with a secretary who, in response to defendant Larkin's request for the return of her investment, sent her a mortgage and promissory note executed by plaintiffs in favor of defendant State Mortgage, Inc., which defendant State Mortgage had assigned to defendant Larkin.

Plaintiffs' involvement with Diamond Mortgage Corporation began in January, 1986, when they

* Circuit judge, sitting on the Court of Appeals by assignment.

responded to a television advertisement by Diamond concerning second mortgages on homes. Plaintiffs contacted Diamond to borrow money to repay an automobile loan and to make some home improvements. Their loan request was granted by Diamond and they eventually reached an agreement with Diamond to borrow slightly over $15,000. On March 7, 1986, plaintiffs executed a mortgage and promissory note in the face amount of $19,000 with State Mortgage, Inc., being listed as the lender.[1]

At the time of the execution of the mortgage and promissory note, plaintiffs received no proceeds from the loan but were told that they would receive their money within fifteen business days. It was also represented to plaintiffs that the mortgage would not be recorded until the disbursement of the proceeds. In fact, the mortgage was recorded and no money was ever disbursed to plaintiffs or on plaintiffs' behalf. Plaintiffs repeatedly contacted Diamond to receive the proceeds of the loan to no avail. Plaintiffs never made any payments on the loan.

As noted above, in August, 1986, A. J. Obie sent the mortgage and note and an assignment of the mortgage to defendant Larkin. The assignment bears a date of March 21, 1986.

After discovering that the mortgage had been assigned to defendant Larkin, plaintiffs filed the instant action to quiet title to their home and void the mortgage based upon fraud and lack of consideration. Defendant Larkin answered, claimed she took the note as a holder in due course, and counterclaimed for foreclosure. Defendant State

---

[1] Apparently, State Mortgage, Inc., is, or perhaps more correctly was, an affiliate company of A. J. Obie and Diamond Mortgage. Of the $19,000 principal on the loan, slightly less than $4,000 went to pay Diamond Mortgage Corporation's "loan origination fee" charged for arranging this mortgage.

Mortgage Corporation has not answered. The trial court, in a brief opinion from the bench, concluded that defendant Larkin was not a holder in due course and granted relief in favor of plaintiffs.

We begin by noting that, while plaintiffs do not concede that the promissory note is a negotiable instrument under the Uniform Commercial Code,[2] neither do they argue that the note is not a negotiable instrument. Rather, plaintiffs in their brief merely comment that "it may be argued that" the note "is a negotiable instrument" while noting that a mortgage is not a negotiable instrument. Thereafter, plaintiffs restrict their attention to the question whether defendant Larkin is a holder in due course of the note and whether, if she is a holder in due course, she takes the note free of plaintiffs' defenses. Since plaintiffs do not argue that the note is not a negotiable instrument, we shall assume, without deciding, that it meets the requirements for negotiability and proceed with the analysis of the holder in due course issue.

MCL 440.3302(1); MSA 19.3302(1) establishes the requirements for a holder of a negotiable instrument to be a holder in due course:

> A holder in due course is a holder who takes the instrument
> (a) for value; and
> (b) in good faith; and
> (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

The trial court's bench opinion does not indicate which factor or factors it believed that defendant Larkin failed to meet to qualify as a holder in due course. Plaintiffs, however, contend that she fails to meet all three criteria. We disagree.

---

[2] See MCL 440.3104; MSA 19.3104.

Turning to the requirement of value, plaintiffs contend that defendant Larkin did not pay value for the instrument because her investment with A. J. Obie preceded the mortgage and, in fact, that defendant Larkin had no knowledge of the existence of the mortgage until she received copies of the mortgage, promissory note and assignment that had been mailed to her by A. J. Obie. However, MCL 440.3303; MSA 19.3303 provides as follows:

> A holder takes the instrument for value
> (a) to the extent that the agreed consideration has been performed or that he acquires a security interest in or a lien on the instrument otherwise than by legal process; or
> (b) *when he takes the instrument in payment of or as security for an antecedent claim against any person whether or not the claim is due*; or
> (c) when he gives a negotiable instrument for it or makes an irrevocable commitment to a third person. [Emphasis added.]

Since defendant Larkin took the note in payment of her claim against A. J. Obie arising from her investment, even though that investment preceded the note, she took the note for value since the note was in payment or .security for an antecedent claim.

Turning to the issue whether defendant Larkin took the note in good faith, plaintiffs argue that there was no good faith because there is no evidence indicating that she bargained for the assignment and that she had merely discovered the documents in her mail box one day after complaining to A. J. Obie in an attempt to receive the return of her investment. We fail to see how these

facts establish any lack of good faith by defendant Larkin. Nothing in the record indicates that she was involved in any fraudulent transactions with A. J. Obie or Diamond. For that matter, nothing in the record even indicates that defendant Larkin was aware of any allegations against A. J. Obie or Diamond that they had engaged in fraudulent business practices. Rather, the evidence indicates that A. J. Obie had failed to live up to its obligations to defendant Larkin and that, in answer to defendant Larkin's resulting complaints to A. J. Obie, the promissory note and supporting documents were delivered to her. This does not, in our opinion, evidence any lack of good faith by defendant Larkin.

Turning to the third and final requirement, that the holder take the instrument without notice that it is overdue or has been dishonored and without notice of any defense against or claim to the note by any person, we are not persuaded by the record that defendant Larkin possessed any such notice. Plaintiffs argue that the fact that defendant Larkin had stopped receiving interest payments from A. J. Obie put her on notice that the note was past due. Plaintiffs' argument is, however, a non sequitur as there is no indication in the record that there was ever a link between the mortgage payments by plaintiffs and the receipt of interest by defendant Larkin. Indeed, no such link existed inasmuch as plaintiffs never made any payments on the note, while defendant Larkin did receive interest payments on her investment for a period of time. Furthermore, even if such a link theoretically existed, or even was intended to exist, there is no indication from the record that defendant Larkin was ever aware of the existence or purported existence of such a link between the note

and her interest payments.[3] For these reasons, we conclude that defendant Larkin was not on notice that the note was past due.

Turning to the question whether she was on notice of any claim or defense by plaintiffs, the evidence in the record indicates that defendant was not aware of plaintiffs being defrauded by Diamond until after the assignment had occurred and the documents were mailed to her. At most, the record indicates that defendant Larkin was aware that A. J. Obie and Diamond were having financial difficulties and were headed for bankruptcy before she received the assignment in the mail.[4] However, the mere fact that defendant Larkin was aware that A. J. Obie and Diamond were having financial difficulties does not support the proposition that she was aware of any fraudulent conduct against plaintiffs or that plaintiffs had not received the proceeds from the promissory note. Indeed, the fact that defendant Larkin was aware of the financial difficulties of A. J. Obie and Diamond does not establish any knowledge or, for that matter, any reason for defendant Larkin to suspect

[3] For that matter, the absence of link between the note and defendant Larkin's interest payments is further indicated by the fact that defendant Larkin's investment with A. J. Obie preceded the existence of the note and mortgage. Moreover, the purported date of the assignment of the mortgage is March 21, 1986. However, under the terms of the note, no payment was due by plaintiffs until May 1, 1986. Thus, if the assignment did occur on the date it purports to have occurred, the note was not past due when it was negotiated to defendant Larkin. On the other hand, if the stated date on the assignment is false, and the notarization fraudulent, the record nevertheless remains devoid of any evidence that defendant Larkin was aware of any fraudulent practices by A. J. Obie or Diamond Mortgage or that A. J. Obie had ever linked her investment to plaintiffs' mortgage until A. J. Obie sent the mortgage documents to defendant Larkin. The same analysis applies if we take the day defendant Larkin received the assignment in the mail as the date she became the holder of the instrument.

[4] Indeed, if the date of the assignment of the mortgage is taken as true, the assignment actually occurred several months before the problems surrounding A. J. Obie and Diamond Mortgage surfaced.

that A. J. Obie and Diamond had engaged in fraudulent business practices either as a general proposition or with specific reference to the transaction with plaintiffs. Simply put, the fact that a business is insolvent does not establish any fraudulent conduct by that business or that there are defenses to a negotiable instrument held by that business. Had the record indicated that defendant Larkin was aware that A. J. Obie and Diamond had engaged in fraudulent business practices, we might be persuaded to conclude that she was on notice of a possible defense against the mortgage and note by plaintiffs. We could even possibly be persuaded to conclude that such notice existed had there even been evidence that allegations of fraudulent business practices by A. J. Obie and Diamond had been broadcast to the general public by the news media. However, there is no evidence on the record before us to indicate that either defendant Larkin in particular or the public in general had even been aware of any allegations of fraudulent practices by A. J. Obie and Diamond at the time defendant Larkin received the note and mortgage. Lacking any such knowledge, we conclude that defendant Larkin took the instrument without notice of any defense by plaintiffs.

For the above reasons, we conclude that defendant Larkin was, in fact, a holder in due course of the promissory note and that the trial court's finding to the contrary was clearly erroneous. See MCR 2.613(C). Accordingly, defendant Larkin took the note free from all personal defenses of plaintiffs and is subject only to so-called real defenses which could be raised by plaintiffs. See MCL 440.3305; MSA 19.3305.

Since the trial court terminated its analysis of this case with its finding that defendant was not a holder in due course, we believe the appropriate

remedy is to remand the matter to the trial court for reconsideration of its decision in light of our holding that defendant Larkin was, in fact, a holder in due course. On remand, the trial court shall determine whether plaintiffs have any viable defense to the instrument in light of defendant Larkin's status as a holder in due course and, if no such defense exists, the trial court shall determine if defendant Larkin is entitled to foreclose on the mortgage and, if so, what amount, if any, is owed by plaintiffs to defendant Larkin on the mortgage.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Defendant Larkin may tax costs.