**In re PEET PACKING COMPANY, Debtor.**

**Randall L. Frank, Trustee, Plaintiff,**

v.

**Dennis L. McLain, Defendant.**

**Bankruptcy No. 95–20725.**
**Adversary No. 97–2098.**

United States Bankruptcy Court,
E.D. Michigan,
Northern Division.

March 26, 1999.

E. Todd Sable, Birmingham, MI, for plaintiff.

Dennis L. McLain, Grovetown, GA, in pro per.

Randall L. Frank, Attorney at Law, Bay City, MI, trustee.

### OPINION DETERMINING THAT "FAIR CONSIDERATION" UNDER MICH.COMP.LAWS § 566.19(1) IS CONSIDERED FROM VIEWPOINT OF TRANSFEREE

ARTHUR J. SPECTOR, Bankruptcy Judge.

The issue to be decided in this proceeding is whether the transferee of a constructively fraudulent transfer, who without knowledge of the fraud and in good faith suffers a detriment in kind and amount that is a fair equivalent to what he received from the transferor, is a "purchaser for fair consideration" who is immunized from recovery under the Michigan Uniform Fraudulent Conveyance Act.

The Court answers this question in the affirmative.

## Introduction

An involuntary petition for relief under chapter 7 of the Bankruptcy Code was filed against the Debtor on June 29, 1995. The Debtor's principals were Dennis D. McLain ("McLain") and Roger Smigiel. In addition, McLain owned Kristin Enterprises, Inc., which in turn managed WAJY Radio, a radio station located in Aiken, South Carolina.[1]

McLain arranged for the Debtor to pay, directly from its own checking account, the payroll and other expenses of WAJY in 1994 and part of 1995. Dennis L. McLain ("Defendant"), McLain's son, was employed full-time by WAJY as the station manager. During the relevant time period, Defendant received payroll checks, written on the Debtor's checking account, totaling about $26,541.24. The Trustee asserts that the wages paid to the Defendant were fraudulent transfers by the Debtor. Complaint at ¶ 52.[2] Accordingly, the Trustee seeks to avoid such transfers pursuant to 11 U.S.C. § 544(b), utilizing the Michigan Uniform Fraudulent Conveyance Act ("MUFCA"). Mich.Comp.Laws. § 566.11 *et seq.*, and to recover them pursuant to 11 U.S.C. § 550(a). Complaint at ¶ 57.[3]

## Fraudulent Conveyance Pursuant to § 544(b)

Section 544(b) provides that:

[T]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b).

Section 544(b) operates by incorporating state law into the bankruptcy process and enables the "trustee . . . [to] exercise the rights of creditors under state fraudulent transfer law. . . ." 5 *Collier on Bankruptcy* ¶ 544.09[2] (15th ed. rev.1998). *See also N.L.R.B. v. Martin Arsham Sewing Co.*, 873 F.2d 884, 887 (6th Cir.1989); *Webster v. Barbara (In re Otis & Edwards, P.C.)*, 115 B.R. 900, 907 (Bankr. E.D.Mich.1990). The Trustee relies upon § 566.14 of the Michigan Compiled Laws, which provides:

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

Mich.Comp.Laws § 566.14. To satisfy the requirements of this section, the Trustee must prove that: 1) the Debtor made a conveyance or incurred an obligation; 2) the Debtor was insolvent at the time of the conveyance or the incurrence of the obligation or the conveyance or obligation caused the Debtor to be rendered insolvent; and 3) the conveyance or obligation was made without fair consideration. *See Foodland Distrib. v. Al–Naimi*, 220 Mich.

---

1. Though it was never firmly established at trial, it appears that WAJY was owned by GRR Marketing, Inc. during the relevant time period.

2. All of the other employees and all of the other expenses of the radio station were likewise paid with checks drawn on Peet Packing's accounts. Nevertheless, even though the Trustee admitted at trial that his theory of the case would have supported recovery against all of the other recipients of the Debtor's checks—and that the Trustee had no reason to believe that young Mr. McLain was in cahoots with his dad and Smigiel, or was a no-show employee, or received excessive remuneration—only the Defendant's wages were the subject of suit. The Trustee's witnesses explained that they were asked to identify "insider" payments and only the Defendant had a surname of Smigiel or McLain.

3. The Trustee's complaint contains a second Count which seeks to avoid the transfers pursuant to 11 U.S.C. § 547(b). However, the Trustee voluntarily dismissed the § 547(b) cause of action at trial.

App. 453, 481, 559 N.W.2d 379 (1997) (Pickard, J., concurring/dissenting); *Otis & Edwards, P.C.*, 115 B.R. at 907–12.

■ Each paycheck dispensed to Defendant constituted a conveyance. *See* Mich. Comp.Laws § 566.11 (providing that a " '[c]onveyance' includes every payment of money, assignment, release, transfer, lease, mortgage or pledge of tangible or intangible property, and also the creation of any lien or encumbrance"). The Trustee also established that the Debtor was insolvent during the time period in which it paid Defendant's salary. As to whether the conveyance was made by the Debtor without fair consideration, it is uncontested that the Defendant's labors were for WAJY Radio, not the Debtor. Moreover, it does not appear that the Debtor derived any income from Kristin Enterprises' management of the radio station.[4] These facts demonstrate that the Debtor did not receive "fair consideration" in exchange for the paychecks conveyed to Defendant. Therefore, the Trustee is correct when he asserts that the transfers were fraudulent conveyances under state law.

### Avoiding the Fraudulent Conveyances Under Michigan Law

■ Whether the fraudulent conveyances can be avoided is the real question. The rights of a complaining creditor who has proved a fraudulent conveyance are set forth in Mich.Comp.Laws § 566.19. This section provides:

(1) Where a conveyance or obligation is fraudulent as to a creditor, such credi-

tor, when his claim has matured, may, as against any person *except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase,* or one who has derived title immediately from such purchaser;

(a) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or

(b) Disregard the conveyance and attach or levy execution upon the property conveyed.

Mich.Comp.Laws § 566.19(1) (emphasis added).

The Trustee does not contend that Defendant had knowledge of the fraud when he accepted the paychecks in exchange for his labors. Rather, the Trustee asserts that Defendant was not a "purchaser for fair consideration" and that, as a result, he is not protected by § 566.19 and must return the $26,541.24 to the estate. The Trustee's argument hinges on the meaning of "fair consideration." MUFCA provides:

Fair consideration is given for property, or obligation;

(a) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

(b) When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as

---

4. There was some evidence that the radio station's gross receipts were sent to the offices of McLain and Smigiel in Chesaning and Southfield, Michigan. The Debtor's facilities were in Chesaning and there is evidence that the Debtor maintained offices with McLain and Smigiel in Southfield. There is no evidence to show what became of the gross receipts once they got to Michigan: Did McLain and Smigiel deposit the money in the Debtor's accounts out of which it paid Defendant's salary (as well as the salary of other station employees and the other operating expenses of the station)? Or did they divert these receipts to Kristin Enterprises or some

other entity to the ultimate prejudice of the Debtor? The Trustee did not establish that the gross receipts did not come into the Debtor's account to cover the expenses. And that might be enough for the Court to find that the trustee failed to establish one element of his cause of action—namely, that the Debtor did not receive fair consideration. However, for purposes of this opinion, we will assume that McLain and/or Smigiel diverted the receipts to their own accounts, such as Kristin Enterprises, leaving the Debtor to pay the expenses. We, therefore, assume that the Debtor did not receive fair consideration.

compared with the value of the property or obligation obtained.

Mich.Comp.Laws § 566.13.

Establishing that a party to a transaction provided "fair consideration" generally requires two findings: that the party acted in good faith; and that the values exchanged were a fair equivalent. *See Otis & Edwards,* 115 B.R. at 907. At trial, the Trustee presented no meaningful evidence to suggest that Defendant lacked good faith when he accepted the paychecks. And the Trustee does not assert that the wages received by Defendant were unreasonable or in any way excessive.

However, the Trustee argues that the above findings do not end the inquiry. He reasons that what constitutes "fair consideration" for purposes of MUFCA "must be determined from the standpoint of creditors." Plaintiff's Post–Trial Brief at 7. That is, "fair consideration" will have been provided within the meaning of MUFCA only when the transferor receives property that is equivalent in value to the property that it gave. *Id.* Using this definition, the Trustee asserts that the "purchaser for fair consideration" exception in § 566.19(1) can never be used in connection with § 566.14 because once it has been shown for purposes of § 566.14 that a transferor has made a conveyance without receiving "fair consideration," the transferee cannot claim to be a "purchaser for fair consideration." *Id.* at 14.

As a matter of statutory interpretation, the Trustee's position does not hold water. First, § 566.13 does not in so many words say that "fair consideration" must always be determined by the measure of what the transferor received. Since § 566.13 fails to provide a definitive answer to the question, we will broaden our focus and consider how "fair consideration" fits into MUFCA as a whole. *See, e.g., Drouillard v. Stroh Brewery Co.,* 449 Mich. 293, 303, 536 N.W.2d 530 (1995) ("[I]n the interpretation of statutes, effect must be given, if possible, to every word, sentence and section

and, to that end, the entire act must be read to be an harmonious and consistent enactment as a whole.").

MUFCA identifies five types of fraudulent conveyances: Mich.Comp.Laws § 566.14—Conveyance by insolvent; § 566.15—Conveyances by persons in business; § 566.16—Conveyances by a person about to incur debts; § 566.17—Conveyance made with intent to defraud; and § 566.18—Conveyance of partnership property.

Each of the constructive fraud sections— §§ 566.14 through 566.16 and § 566.18(b)—requires a showing that the transferor made a conveyance without receiving "fair consideration." Conversely, under MUFCA's actual fraud section— § 566.17—the absence of fair consideration need not be shown. A plaintiff that proves a conveyance was fraudulent pursuant to one of the above sections can then avail itself of the recovery rights delineated under § 566.19. As noted above, § 566.19 also contains the term "fair consideration." This brief tour through the landscape of MUFCA is revealing. In the Court's view, the fact that "fair consideration" is defined rather generically in § 566.13 and that the term is then interspersed throughout MUFCA, strongly points to the conclusion that a determination of whether "fair consideration" should be viewed from the standpoint of the transferor or the transferee must be decided from the context of the section at issue.

Turning to § 566.14, it is clear from its context that a conveyance is to be deemed fraudulent if the consideration does not run to the benefit of the transferor. The whole section focuses on the actions of the transferor. The subject of the section is the "conveyance made ... by [the transferor]." The section then asks whether the transferor made the conveyance "without a fair consideration." In other words, the query in § 566.14 is whether the transferor conveyed something of value without receiving a fair equivalent in return. The

other fraudulent conveyance sections are essentially identical in character.

In contrast, the focus in § 566.19 is on the transferee. Section 566.19 asks whether the transferee, in good faith, conveyed something of value that is a fair equivalent to what he received. Thus, when analyzing the term within the context of the various MUFCA sections, it does not seem that what constitutes "fair consideration" is always to be measured by what the transferor received.

Moreover, were we to adopt the definition of "fair consideration" urged by the Trustee, § 566.19(1)'s exception for a "purchaser for fair consideration" would apply only to § 566.17. In fact, the Trustee argues for just such an interpretation of MUFCA—"The pertinent language of [§ 566.19], cannot possibly impact on any transfer except, a transferee subject to [§ 566.17]." Plaintiff's Post–Trial Brief at 14.

But § 566.19(1) does not contain language of limitation. That is, the wording of this section does not suggest in any way that it should be interpreted to mean that some of the rights or defenses provided therein apply to some types of fraudulent transfers but not to others.

■ Furthermore, the Trustee's position renders nearly useless the good-faith purchaser exception of § 566.19(1). After all, proving actual fraud is a difficult task. *United States v. Rode,* 749 F.Supp. 1483, 1493 (W.D.Mich.1990) (citing *United States v. Leggett,* 292 F.2d 423, 426 (6th Cir. 1961)). It is difficult to imagine a situation where a creditor who could prove actual fraud could not also meet the easier standard of constructive fraud. Thus, any time the defendant has even a chance of establishing himself as a good faith purchaser, a savvy creditor would proceed under one of the constructive fraud sections, regardless of whether actual fraud could be proven, so that its efforts to recover the fraudulently transferred goods would not be tripped up by § 566.19(1)'s

"purchaser for fair consideration" exception. Needless to say, a statute should not be interpreted in a manner that renders a portion "inoperative or superfluous, void or insignificant." 2A *Sutherland Stat. Const.* § 46.06; *see also Beaudrie v. Anchor Packing Co.,* 231 Mich.App. 242, 251, 586 N.W.2d 96 (1998).

Despite the cogency of the above statutory analysis, the Court's inquiry is not at an end for the Trustee quotes from a number of cases that seem to support his position. For instance, in *Dunn v. Minnema,* 323 Mich. 687, 693, 36 N.W.2d 182 (1949) the Michigan Supreme Court stated that "[w]hat constitutes ... a 'fair consideration' under the Fraudulent Conveyance Act must be determined from the standpoint of creditors." *See also In re Anderson Indus., Inc.,* 55 B.R. 922, 927 (Bankr.W.D.Mich.1985) (quoting same statement from *Dunn* ). The Trustee cites two other cases in support of his proposition that "to avoid fraudulent recovery, the value exchanged must necessarily flow to the transferor." Plaintiff's Post–Trial Brief at 7–8 (citing *Otis & Edwards,* 115 B.R. at 907–08; and *Central Nat'l Bank of Cleveland v. Coleman (In re B–F Building Corp.),* 312 F.2d 691 (6th Cir.1963)). In *Otis & Edwards,* the court stated:

> [Section] 566.13 ... require[s] a finding that the values exchanged were equivalent and that the transferee acted in good faith. If a finding of fair equivalence is made, the court must determine whether the transferee acted in good faith. Where the debtor does not receive a fair equivalence or where the transferee fails to act in good faith, this court will make a finding that the debtor did not receive fair consideration.

115 B.R. at 907–08. In *B–F Building Corp.,* the debtor and Baird–Foerst Corporation were substantially owned and controlled by the same individual. Baird–Foerst borrowed $10,000 from a bank and in return gave the bank an unsecured $10,000 promissory note. 312 F.2d at 692–93. In a subsequent transaction, the debtor

gave the bank a $10,000 demand note secured by the proceeds from the sale of land owned by the debtor. *Id.* at 693. In return for the demand note, the bank deemed the first promissory note satisfied. *Id.* The Sixth Circuit held that the second transaction did not provide "fair consideration." *Id.* at 694.

However, when these cases are viewed in context they are inapposite to the question at bench. The question in each of these cases was whether a fraudulent conveyance had even occurred. So these courts were necessarily focused on whether the transferor received "fair consideration" in exchange for the property conveyed. And we have already agreed that for §§ 566.14–17, the focus is indeed on what the transferor received. *Supra* p. 391. But more importantly, not one of these cases even involved a transferee who claimed to be a "purchaser for fair consideration" entitled to the protection of § 566.19(1). Accordingly, these courts had no reason to address the question of whether, for purposes of § 566–19(1), the consideration must flow *to the transferor* to be "fair." The Trustee's reliance on these cases is, therefore, inappropriate.[5] While there are no cases directly on point, there are a number of cases which do address the rights of a "purchaser for fair consideration." And significantly, each of these cases belie the Trustee's position.

In *In re Elkins,* 94 B.R. 932 (Bankr. W.D.Mich.1988) (*Elkins I*), the debtor sold property for a $15,000 profit. In order to keep this money out of the hands of his creditors, the debtor transferred the money to himself and his wife as tenants by the entirety. It was this transfer that was later found to be a fraudulent conveyance. *See In re Elkins,* 94 B.R. 935, 938 (Bankr.W.D.Mich.1988) (*Elkins II*). The debtor and his wife then used the fraudulently conveyed money as a down payment

on real estate which they purchased from Zaagman. *Elkins I,* 94 at 933. In a subsequent case, the trustee sought to recover the $15,000 from Zaagman. *Elkins II,* 94 B.R. 935. However, the court held that Zaagman was a good-faith purchaser for fair consideration who was protected by § 566.19(1)'s exception. *Id.* at 937. When determining whether Zaagman provided fair consideration for purposes of § 566.19(1), the court focused on whether the property conveyed by Zaagman was reasonably worth what he received in return. The fact that the consideration flowed to the debtor and his wife jointly, and not to the debtor, was irrelevant to the court's determination.

In *Spencer v. Miller,* 279 Mich. 194, 271 N.W. 731 (1937), LaGary quitclaimed property worth $11,550 to her daughter, Loiselle, in an apparent attempt to protect it from a potential judgment creditor. *Id.* at 196, 202, 271 N.W. 731. Loiselle sold the property to Miller in exchange for about $800 cash and a farm valued at $1,600. *Id.* at 197 and 202, 271 N.W. 731. After judgment was entered against LaGary she filed bankruptcy. The trustee, Spencer, brought suit against Miller, the purchaser. At that time, Michigan's fraudulent conveyance law was codified at 3 Comp. Laws 1929, § 13392 *et seq.* The language of the relevant provisions were the same then as they are now.

The issue in *Spencer* was whether Miller was shielded from the trustee's attempt to recover the property originally owned by LaGary on the basis of being a bona fide purchaser.[6] In determining whether Miller was a bona fide purchaser, the court focused in part on the consideration that had been provided by Miller. The court held that Miller did not provide "fair consideration" in the conveyance between him and Loiselle because of the plain insufficiency of the price. *Id.* at 202–203, 271

**5.** The Trustee cites a handful of other cases to bolster his argument. However, these cases are no more helpful than those discussed and rejected above.

**6.** While this was clearly the issue in the case, for some reason the court did not specifically cite to 3 Comp.Laws 1929, § 13400, the predecessor of Mich.Comp.Laws § 566.19.

N.W. 731. As in *Elkins*, the fact that the consideration provided by Miller did not flow to LaGary was irrelevant to the court's determination.[7] The fair consideration analysis was primarily addressed from the perspective of what Miller gave in return for the property, not what La-Gary received. In short, the focus was on Miller's status: since he paid so inadequate a price, his bona fides were not established. The lesson we take from that is that if Miller had paid more for the property, the conveyance would not have been set aside even though he paid it to Loiselle instead of LaGary.

Another Michigan case involving a "purchaser for fair consideration" is *Cowan v. Anderson*, 184 Mich. 649, 151 N.W. 608 (1915). In that case, Mrs. Miller conveyed certain real property to her husband shortly before her death. *Id.* at 651, 151 N.W. 608. Mr. Miller, who was indebted to Horace Brown, conveyed the property to Mr. and Mrs. Anderson for no consideration. Pursuant to Mr. Miller's instructions, the Andersons then conveyed the property for no consideration to Clara Miller, Mr. Miller's daughter. *Id.* Clara Miller then sold the property to Elbert George who gave $725 cash and assumed a $125 mortgage on the property. *Id.* at 652, 151 N.W. 608. The court accepted the trial court's determination that Mr. Miller's original intent was to prevent Brown from collecting on his debt and that neither the Andersons nor Clara Miller were bona fide purchasers. *Id.* at 653–54, 151 N.W. 608. The question before the court, however, was whether the aggrieved creditor could recover from Mr. George. The court answered this question in the negative because "defendant George was a

bona fide purchaser of [the] property in good faith and for a valuable consideration." *Id.* at 655, 151 N.W. 608. The court reached this conclusion despite the fact that the consideration provided by Mr. George did not flow to Mr. Miller, the original transferor.

In *Globe Casket Mfg. Co. v. Wolcott*, 106 Mich. 151, 64 N.W. 10 (1895), Kinney was indebted to Globe Casket. After becoming ill, Kinney tendered a bill of sale for his business to Bresie, his son-in-law, to whom Kinney was also indebted. The arrangement was that Bresie was to operate the business until he had realized enough to satisfy the debt he was owed by Kinney, at which time he was to return the business to Kinney. But before he could recover the full debt, Bresie died. After operating the business for a period of time, Bresie's estate sold the business to Wolcott.

Globe Casket sued Wolcott, claiming that title still remained in Kinney. The Supreme Court held that as Wolcott had paid Bresie's estate a fair consideration, Kinney's creditors could not force him to return the business. It made no difference whatever that none of the consideration Wolcott paid made it to Kinney's creditors. *Id.* at 154–55, 64 N.W. 10.

A logical reading of the plain language of MUFCA and the relevant case law all lead to the conclusion that Defendant is protected by § 566.19(1)'s exception for a "purchaser for fair consideration." Consequently, the Court concludes that Michigan law does not permit the fraudulent conveyance in question to be avoided as against Defendant.

---

7. We note that the trial court in *Spencer* deemed the transfer to have been directly between LaGary and Miller, not between Loiselle and Miller. *Spencer v. Miller*, 279 Mich. 194, 200, 271 N.W. 731 (1937). However, this fact does not change our interpretation of the case. The Supreme Court did not explicitly adopt this finding by the trial court. In fact, the court seemed to implicitly reject it when it stated that "[i]t is not necessary that

the grantee be an actual party to the fraud in order that a conveyance may be set aside as fraudulent." *Id.* at 201, 271 N.W. 731 (citing *L. Starks Co. v. Eppink*, 185 Mich. 233, 243, 151 N.W. 676 (1915)). Furthermore, the court's subsequent fair consideration analysis was couched in terms of "[t]he consideration moving from Miller to Blanche Loiselle." *Id.* at 200, 271 N.W. 731.

## Parallel Notions in the Law

While the following examples may not be directly applicable to the situation at hand, they demonstrate the strength and consistency of the good-faith-purchaser defense under Michigan law.

A holder in due course is defined as a holder who takes a negotiable instrument "for value; ... in good faith; and ... without notice ... of any defense against or claim to it on the part of any person." *Mox v. Jordan*, 186 Mich.App. 42, 45, 463 N.W.2d 114 (1990); *see also* Mich.Comp. Laws § 440.3302(1). It is apparent that a holder in due course is essentially the equivalent of a good faith purchaser for value. Defendant accepted the paychecks in good faith and without knowledge of the fraud. As a result, a determination of whether Defendant was a holder in due course hinges on the issue of value.

"An instrument is issued ... for value if ... [it] is issued ... as *payment of ... an antecedent claim against any person ....*" Mich.Comp.Laws § 440.3303(1)(c) (emphasis added). There is no requirement that the value provided by the holder go to the drawer of the negotiable instrument. Instead, value is deemed to have been given by the holder even if it went to a third party and not the drawer or maker of the instrument. *Thomas v. State Mortgage, Inc.*, 176 Mich.App. 157, 162, 439 N.W.2d 299, 9 U.C.C.Rep.Serv.2d 1276 (1989); *Barbour v. Handlos Real Estate & Bldg. Corp.*, 152 Mich.App. 174, 191, 393 N.W.2d 581, 2 U.C.C.Rep.Serv.2d 963 (1986); *Rieth–Riley Constr. Co. v. First Security Bank (In re Williams Bros. Asphalt Paving Co.)*, 59 B.R. 71, 76, 1 U.C.C.Rep.Serv.2d 794 (Bankr.W.D.Mich. 1986). Accordingly, Defendant was a holder in due course with respect to each paycheck.

Once a party acquires the status of a holder in due course, he is generally able to "enforce the obligation of a party to pay [the] instrument...." Mich.Comp.Laws § 440.3305(1). Moreover, once payment is made on an instrument, that payment is final as to any "person who took the instrument in good faith and for value or who in good faith changed position in reliance on the payment or acceptance." Mich.Comp.Laws § 440.3418.

A similar result occurs under the law of contract. The Restatement (Second) of Contracts § 164(2) provides that a contract otherwise voidable, cannot be voided as to a party to the transaction who "in good faith and without reason to know of [any fraudulent or material misrepresentation by one who is not a party to the transaction] either gives value or relies materially on the transaction." Defendant's good faith is not in contest. In addition, "Defendant's testimony at trial showed ... that Defendant believed that the Debtor owned and/or controlled WAJY." Plaintiff's Post–Trial Brief at 10. It seems plain that Defendant's labors constituted value for purposes of § 164(2). Under these circumstances, it would be difficult to argue that Defendant did not materially rely on the transaction.

More support is garnered from a recent Michigan Court of Appeals decision applying the law of restitution. In *Shield Benefit Administrators, Inc. v. Regents of University of Michigan*, 225 Mich.App. 467, 470, 571 N.W.2d 556 (1997), the court was confronted with "the question of whether a medical provider, as a third-party creditor accepting payment to discharge a debt owed by an insured patient, is required to make restitution for a mistaken payment by the insurer." The trial court found for the insurer based on the "rule that payment made under a mistake of fact can be recovered even if the mistake could have been avoided by the payor." *Id.* (citing *Couper v. Metropolitan Life Ins. Co.*, 250 Mich. 540, 544, 230 N.W. 929 (1930)). In reversing, the court of appeals relied on the Restatement of Restitution which provides:

A creditor of another or one having a lien on another's property who has received from a third person any benefit in

discharge of the debt or lien, is under no duty to make restitution therefor, although the discharge was given by mistake of the transferor as to his interests and duties, if the transferee made no misrepresentation and did not have notice of the transferor's mistake.

*Id.* (quoting Restatement, Restitution, § 14(1) at 55). Although the conveyances made by the Debtor can hardly be viewed as a mistake, the equities involved in the matter before the Court would seem to call for a result identical to the one reached in *Shield Benefit Administrators.* *See also* Craig H. Averch, *Protection of the "Innocent" Intial Transferee of an Avoidable Transfer: An Application of the Plain Meaning Rule Requiring Use of Judicial Discretion,* 11 Bankr.Dev.J. 595, 621–22 (1994–95) (discussing other protections innocent purchasers for value have against liability for restitution). The article explains that "if A fraudulently gets title to Blackacre from the plaintiff, then sells it to an innocent purchaser, the plaintiff is not entitled to recover Blackacre from that purchaser." *Id.* at 621 n. 144 (citing Dan B. Dobbs, *Law of Remedies* § 4.1(2) (2nd ed.1993)).

A final comparison worth noting comes from the law of stolen property. A thief does not acquire good title to property. As a result, one who takes property from a thief, even in good faith and for value, generally does not acquire title to such property. *See Jackson v. Peerless Portland Cement Co.,* 238 Mich. 476, 213 N.W. 863 (1927); *Ward v. Carey,* 200 Mich. 217, 223, 166 N.W. 952 (1918). But there is an exception to this rule for the theft of currency. A party who takes stolen currency in good faith and for value cannot be divested of such currency by the victim of the thief. *See, e.g., Ohio Cas. Ins. Co. v. Smith,* 297 F.2d 265 (7th Cir.1962); *City of Portland v. Berry,* 86 Or.App. 376, 739

P.2d 1041, 1043–44 (1987); *Transamerica Ins. Co. v. Long,* 318 F.Supp. 156, 160 (W.D.Pa.1970); *Kelley Kar Co. v. Maryland Cas. Co.,* 142 Cal.App.2d 263, 298 P.2d 590, 592 (1956).[8] This rule is of course similar to the rule that "[w]hen one receives payment in good faith, in the ordinary course of business, and for a valuable consideration the money cannot be recovered even though it was fraudulently obtained from a third person." *Gandy v. Cole,* 35 Mich.App. 695, 193 N.W.2d 58 (1971) (citing *Walker v. Conant,* 69 Mich. 321, 37 N.W. 292 (1888)).

### Recovery of Fraudulent Transfer Pursuant to § 550(a)

■ It would seem that the above conclusion should end the inquiry. But the Trustee has a fall-back position that he derives from *Elkins II.* In that case, the court stated that a trustee's right to recover "must be analyzed pursuant to ... § 550 which governs whether the transfer was avoided pursuant to § 544(b) and state law." *Elkins II,* 94 B.R. at 937. The Trustee argues that *Elkins II* supports his view that once a conveyance has been determined to be fraudulent, § 550(a)(1) identifies the parties that the Court must look to in order to determine whether and against whom the conveyance can be avoided. The Court has already found the conveyance in question to be fraudulent. *See supra* p. 390. Accordingly, the Trustee argues that the available remedies are dictated by § 550(a)—and not state law—thereby rendering irrelevant whatever limitations Mich.Comp.Laws § 566.19(1) may place upon his ability to recover from the Defendant.

Section 550 provides in relevant part:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544 ... of this title, the trustee may recover, for the

---

**8.** So if McLain had at gunpoint robbed a Peet Packing employee on her way to make a company bank deposit, then deposited the loot in his own bank account, and wrote a check to a third party for the purchase of a personal good or service, Peet Packing could not recover the money from the third party. How strange it would be if money taken by way of white-collar fraud were recoverable from a similarly-situated recipient.

benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

    (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

    (2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under section (a)(2) of this section from—

    (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or

    (2) any immediate or mediate good faith transferee of such transferee.

11 U.S.C. § 550.

Section 550 contains a good-faith purchaser exception for immediate and mediate transferees of the initial transferee. 11 U.S.C. § 550(b). But the same protection is not explicitly provided to initial transferees.[9] From this, the Trustee asserts that § 550(a) permits recovery from an initial transferee who not only was unaware that the conveyance was fraudulent, but who gave fair value as part of the exchange. Therefore, he says, § 550(a) mandates recovery against Defendant.

However, like his primary argument, the Trustee's fall-back position collapses under scrutiny. The case upon which the Trustee relies, *Elkins II*, was simply incorrect when it stated that § 550 governs whether a transfer is avoided pursuant to § 544(b) and state law. The question of avoidance is determined before § 550 ever comes into play as § 550 provides that a trustee may recover from a transferee (initial or otherwise) only "to the extent that [such]

---

**9.** Identifying a defendant as an initial transferee on the one hand or an immediate or mediate transferee on the other is frequently a subjective exercise, affected by the equities of the case. *See* 5 *Collier on Bankruptcy*, ¶ 550.02(b); Craig H. Averch, *Protection of the "Innocent" Intial Transferee of an Avoidable Transfer: An Application of the Plain Meaning Rule Requiring Use of Judicial Discretion*, 11 Bankr.Dev.J. 595 (1994–95). As a technical matter, general principles of banking law would likely deem the drawee bank that cashed the paychecks given to Defendant as the initial transferee. *See* Averch, *supra* at 616–17. To avoid the apparent inequities of such a determination, some courts have deemed banks in this position to be "mere conduits" of the transferee and not actual transferees subject to potential liability under § 550(a). *Id.* at 605–616. However, even under the "mere conduit" approach, someone in the position of Defendant might not necessarily be deemed the initial transferee. For example, some courts have held that one in the position of the senior McLain, or Kristin Enterprises, or even GRR Marketing, was the initial transferee. *See Leonard v. Mountainwest Fin. Corp. (In re Whaley)*, 229 B.R. 767, 774–75 (Bankr.D.Minn.1999) (debtor's companion who wrote check off their joint account, not the payee of the check, held initial transferee); *Huennekens v. Marx (In re Springfield Contracting Corp.)*, 154 B.R. 214, 219–20 (Bankr.E.D.Va.1993) (officer of debtor corporation deemed initial transferee where he was drawer of a number of company checks made payable to cash despite fact that at least some of the checks were endorsed by someone other than the officer); *Still v. American Nat'l Bank & Trust Co. of Chattanooga (In re Jorges Carpet Mills, Inc.)*, 50 B.R. 84, 85 (Bankr. E.D.Tenn.1985) (debtor's chief executive officer deemed initial transferee where he purchased cashier's check with corporate funds and then used cashier's check to pay for personal debt). One could, therefore, make a plausible argument that Defendant was not the initial transferee.

Moreover, even if Defendant were subject to recovery under § 550(a) and he were deemed to be the initial transferee, that would not necessarily render him liable. Section 550(a) provides that "the trustee may recover . . . the property transferred, or, if the court so orders, the value of such property. . . ." 11 U.S.C. § 550(a). The Trustee of course does not seek to recover the paychecks, which were the actual property transferred. Rather, he seeks to recover "the value of such property." As the language of § 550(a) makes plain, when it is the value of the property and not the property itself that a trustee seeks to recover, such recovery may only be had "if the court so orders." Thus, § 550(a) appears to invest the court with the equitable discretion to not permit recovery from an initial transferee under appropriate circumstances. An argument could be made that such appropriate circumstances would arise when the initial transferee is a good-faith purchaser for value. Averch, *supra* at 618–623.

transfer is [already] avoided under section 544." 11 U.S.C. § 550(a); *see* 5 *Collier on Bankruptcy* at ¶ 550.01[1] Section 550 permits a trustee ..., *after avoidance of a transfer* under the trustee's avoiding powers, to recover the property transferred or the value of the property from an initial transferee who not only was unaware that the conveyance was fraudulent, but who gave fair value as part of the exchange. Therefore, he says, § 550(a) mandates recovery against Defendant.

However, like his primary argument, the Trustee's fall-back position collapses under scrutiny. The case upon which the Trustee relies, Elkins II, was simply incorrect when it stated that § 550 governs whether a transfer is avoided pursuant to § 544(b)and state law. The question of avoidance is determined before § 550 ever comes into play as § 550 ever comes into play as § 550 provides that a trustee may recover from a transferee (initial or otherwise) only "to the extent that [such] transfer is [already] avoided under section 544." 11 U.S.C. § 550(a); *see* 5 *Collier on Bankruptcy* at ¶ 550.01[1] ("Section 550 permits a trustee ..., *after avoidance of a transfer* under the trustee's avoiding powers, to recover the property transferred or the value of the property transferred.") (emphasis added). *See also id.* at ¶ 550.02[1] ("[W]en the trustee seeks to recover the property transferred or its value under section 550(a), the recovery may be made only to the extent the transfer was avoided."); Analysis of S.2266, S.Rep.No. 989 95th Cong., 2d Sess. 90 (1978); 124 Cong. Rec. H11,097 (daily ed. Sept. 28, 1978); S17,14 (daily ed. Oct. 6, 1978) ("The liability of a transferee under section 550(a) applies only 'to the extent that a transfer is avoided.' This means that liability is not imposed on a transferee to the extent that a transferee is protected under a provision such as section 548(c) which grants a good faith transferee for value of a transfer that is avoided only as fraudulent transfer, a lien on the property transferred to the extent of value given."). Section 544(b) enables a trustee to avoid transfers that would be avoidable under state law by an unsecured creditor with an allowable claim. *Hirsch v. Gersten (In re Centennial Textiles, Inc.)*, 220 B.R. 165, 171 (Bankr. S.D.N.Y.1998). And as discussed above, such a creditor would not be able to recover from Defendant under Michigan law due to the fact that Defendant was a good-faith purchaser for value. As a result, § 544(b) does not serve to avoid the transfer in question. Since the transfer is not avoided under § 544(b), the remedies found in § 550 cannot be invoked by the Trustee.

For these reasons, we conclude that Defendant, a person who worked full-time at the radio station, suffered a detriment which was fair consideration. Since there was no effort to prove that Defendant knew that his father (and/or Smigiel) had fraudulently taken money rightfully belonging to the Debtor to avoid the transfer of the money to him. Accordingly, the Trustee has no cause of action under 11 U.S.C. § 544(a) or § 550 to recover Defendant's paychecks.