In the Matter of The B-F BUILDING CORPORATION, Bankrupt.

CENTRAL NATIONAL BANK OF CLEVELAND, Appellant,

v.

Ralph H. COLEMAN, Trustee, Appellee.

No. 14767.

United States Court of Appeals
Sixth Circuit.

Feb. 5, 1963.

**692**

H. P. Martin, Cleveland, Ohio, for appellant.

Hugh Wells, Cleveland, Ohio, for appellee.

Before WEICK and O'SULLIVAN, Circuit Judges, and DARR, District Judge.

O'SULLIVAN, Circuit Judge.

This appeal involves the petition of appellant, Central National Bank of Cleveland, for an order directing payment of $10,000.00 to it from funds in the hands of the trustee of the B-F Building Corporation, a bankrupt. Such funds were proceeds from the sale of real estate owned by the bankrupt. The bank claims that it is entitled to such funds by virtue of an assignment of $10,000.00 of such funds made as collateral security for a note given by B-F Building Corporation to such bank on February 14, 1958. The bank's petition was denied by the referee. Such denial was affirmed on review by the District Court, and this appeal followed. The referee and the District Court denied the petition, finding that the giving and taking of the aforesaid note, secured by such assignment, constituted a fraudulent transfer within the meaning of Section 67, sub. d (2) (a) (b) and (c) of the Bankruptcy Act (11 U.S.C.A. § 107, sub. d(2) (a) (b) and (c)).

The bankrupt, B-F Building Corporation, referred to herein as B-F, was the owner of certain real property which it leased to the Baird-Foerst Corporation. Baird-Foerst, which is also bankrupt, was a distributor of General Electric appliances. W. J. Baird was president of, and held controlling interests in, both corporations.

In October, 1957, B-F, owning the premises then occupied by Baird-Foerst, purchased a new site on a land contract. The purchase price was $275,000.00 with a $20,000.00 down payment. Monthly installment payments of $2,151.95 on the balance were to commence February 1, 1958. Two checks of $10,000.00 were issued by B-F to make the down payment. The first, dated October 18, 1957, was returned several times because of insufficient funds, but was finally paid on October 22, 1957. On November 4, 1957, Baird-Foerst borrowed $10,000 from ap-

pellant bank and gave the bank its ninety-one day unsecured demand promissory note. November 5, 1957, Baird-Foerst gave its check for $10,000.00 to B-F and on November 6, B-F paid $10,-000.00 to complete the down payment on the land contract. B-F paid nothing further on this contract, defaulting on the first installment date, February 1, 1958.

In the days preceding February 14, 1958, General Electric, Baird-Foerst's chief creditor, had moved into the affairs of that corporation. At that time, Baird-Foerst and its landlord, B-F, were both "in trouble." Some hasty plans were thereupon made by the appellant bank and W. J. Baird. On February 14, 1958, the B-F Building Corporation gave the appellant bank its demand cognovit note for $10,000.00. W. J. Baird endorsed it. This note, prepared by the bank, was dated November 4, 1957, although admittedly executed on February 14, 1958. The note recited that it was secured by the "proceeds from the sale of the property belonging to the corporation known as 5301 State Road, Parma, Ohio."

A contemporaneous letter of assignment directed an escrow agent to pay to the bank $10,000.00 out of escrow funds held in connection with the uncompleted sale of B-F's aforesaid real estate. B-F received no money from the bank, but the Baird-Foerst note of November 4 was returned to Baird-Foerst. Subsequently, a Notice of Assignment of Accounts Receivable was prepared by one of the bank's attorneys and was executed by B-F on February 24, 1958. This instrument was dated February 14, 1958, and was filed with the county recorder on February 24, 1958. Judgment was taken on the B-F note on February 25, 1958. Baird-Foerst filed a voluntary petition

in bankruptcy on February 21, 1958. Involuntary proceedings against B-F were begun on March 17, 1958.

The District Judge held that "the transactions which are the subject of these proceedings were fraudulent under Section 67, [sub.] d(2) (a) (b) and (c) of the Bankruptcy Act." In pertinent part, Section 67, sub. d(2) of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. d(2), provides:

"Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this title by or against him is fraudulent (a) as to creditors existing at the time of such transfer or obligation, *if made or incurred without fair consideration by a debtor who is or who will be thereby rendered insolvent, without regard to his actual intent;* or (b) as to then existing creditors and as to other persons who become creditors during the continuance of a business or transaction, *if made or incurred without fair consideration by a debtor who is engaged or is about to engage in such business or transaction, for which the property remaining in his hands is an unreasonably small capital, without regard to his actual intent; * * *."* (Emphasis supplied.)

The referee found, and the District Judge affirmed, that the execution of the note on February 14, 1958, was fraudulent because the transaction was supported by "no consideration as defined in Sec. 67 [sub.] d(1) (e)," [1] and was made at a time when B-F was insolvent. B-F's insolvency as of February 14, 1958, is clear. There was testimony by an accountant that on that date the fair salable value of B-F's property

---

1. Section 67, sub. d(1) (e), (11 U.S.C.A. § 107, subd. d(1) (e)), provides that "consideration given for the property or obligation of a debtor is 'fair' (1) when, in good faith, in exchange and as a fair equivalent therefor, property is transferred or an antecedent debt is satisfied, or (2) when such property or obligation is received in good faith to secure a present advance or antecedent debt in an amount not disproportionately small as compared with the value of the property or obligation obtained."

was less than its debts. (11 U.S.C.A. § 107, sub. d(1) (d)). The debts considered by this witness did not take into account a claim of the General Electric Company against B-F in excess of $800,-000.00. Such claim, upon a guaranty given by B-F, was sustained by this court. In re B-F Building Corporation, 284 F.2d 679 (C.A.6, 1960).

The bank advances two arguments in support of its contention that the transfer was supported by fair consideration: first, that the February 14, 1958, note was given in exchange for the satisfaction of an antecedent debt (of Baird-Foerst); and second, that the transaction on February 14 amounted to a novation between the bank, Baird-Foerst and B-F. It is true that the satisfaction of an antecedent debt may be considered as fair consideration to support a transfer made by a debtor. Morrisville Trust Co. v. Moon, 21 F.2d 716 (C.A.3, 1927). In the usual case, however, the payment of another's debt is held to be a transfer without fair consideration. Davis v. Hudson Trust Co., 28 F.2d 740, 742, 743 (C.A.3, 1928) cert. denied 278 U.S. 655, 49 S.Ct. 179, 73 L.Ed. 565; Mayo v. Pioneer Bank & Trust Co., 270 F.2d 823, 829 (C.A.5, 1959); In re College Chemists, Inc., 62 F.2d 1058 (C.A.2, 1933); 4 Remington on Bankruptcy, § 1650.1, p. 158 (1957 Ed.). See also, Annotation, 30 A.L.R.2d 1209.

In the case before us, the most that the evidence shows is that an antecedent debt of Baird-Foerst was satisfied. While under certain circumstances such a transaction might be considered as fair consideration, for instance, if the payment was part of a good faith novation agreement, Barr & Creelman Mill & Plumbing Supply Co. v. Zoller, 109 F.2d 924, 926 (C.A.2, 1940), we are satisfied on the record here that the referee was justified in finding that it was not. The only thing the bank gave for B-F's demand note, its full face amount secured by assignment of the escrow cash, was an unsecured and probably worth-less note of Baird-Foerst. The absence of "good faith", one of the essential elements in the definition of fair consideration, is manifest on the record.

The question of whether consideration is fair is one of fact and one to which considerable weight is given to the findings made by the trier of the facts. In re Peoria Braumeister Co., 138 F.2d 520, 523 (C.A.7, 1943); Roth v. Fabrikant Bros., Inc., 175 F.2d 665, 668 (C.A.2, 1949). We will not set aside a referee's findings, affirmed by a District Judge, in the absence of a clear showing of mistake. Hilliard v. Hollins, 290 F.2d 263, 265 (C.A.6, 1961). No such showing has been made here.

Because of the disposition we make of this appeal, it is not necessary to pass upon other errors alleged. The record sustains the finding that the transactions of February 14 and 24, 1958, were fraudulent within the meaning of Sections 67, sub. d(2) (a) and (b), (11 U.S.C.A. § 107, sub. d(2) (a) and b)).

Judgment affirmed.