**The STATE ex rel. FISHER, Atty. Gen., Appellee and Cross–Appellant,**

v.

**WARREN STAR THEATER et al., Appellees and Cross–Appellants; KELLEY, Appellant and Cross–Appellee.**

[Cite as *State ex rel. Fisher v. Warren Star Theater* (1992), 84 Ohio App.3d 435.]

Court of Appeals of Ohio,
Trumbull County.

No. 91–T–4568.

Decided Dec. 21, 1992.

436

*Lee Fisher,* Attorney General, *Thomas D. McGuire,* Assistant Attorney General, for appellee/cross-appellant state of Ohio.

*Daniel P. Thomas,* for appellees/cross-appellants Warren Star Theater et al.

*Timothy G. Sweeney,* for appellant/cross-appellee Richard W. Kelley.

JOSEPH E. MAHONEY, Judge.

Appellee and cross-appellant, Warren Star Theater, is a nonprofit corporation organized and existing under R.C. 1702.01 *et seq.* The corporation was organized on March 15, 1985, and its purpose was to provide live theatrical performances for the community. The initial trustees were appellee and cross-appellant Frank Kenley, Alice Kenley, and attorney Ned Gold. Subsequently, Alice Kenley resigned as a trustee and officer, but remained an employee of the theater with the specific responsibility of managing the box office and ticket sales.

Frank Kenley, at all times during the acts complained of, was one of only two trustees, the president, the treasurer, the acting secretary and the general manager of the Warren Star Theater. In such capacity, he negotiated contracts with performers, set salaries for employees, entered into advertising contracts and rental agreements, and generally did whatever was necessary to produce the theatrical performances that took place at the Warren Star Theater.

Prior to the summer season of 1987, the Warren Star Theater advertised and sold tickets for performances scheduled for that summer. Season tickets as well as individual tickets were sold. The schedule was to include Mitzi Gaynor for the week of June 23, Peggy Lee for the week of July 14, Pat Boone and Anita Bryant for the week of July 28, and Bobby Vinton for the week of August 11.

The first show, featuring Mitzi Gaynor, was performed as advertised. The second show, featuring Peggy Lee, was cut short after Lee became ill. The third show, featuring Pat Boone and Anita Bryant, was canceled prior to its run. Warren Star Theater and Frank Kenley claim that the performers backed out of their commitment when they failed to show up for the scheduled performances. Appellant, State ex rel. Lee Fisher, claims that Warren Star Theater canceled the contract on July 16, 1987, twelve days before the show was to open, when it failed to pay an advance fee to the performers. In any case, the show was canceled.

Bobby Vinton was scheduled to perform from August 11, 1987 through August 16, 1987. The contractual fee for the performance was $70,000, half of which was payable thirty days prior to August 11, 1987. The advance fee was not paid and,

thus, on July 21, 1987, Bobby Vinton's production company informed Warren Star Theater and Frank Kenley that the contract with Vinton was canceled. Tickets were sold, however, even after the advance fee was not paid, and the box office remained open until July 28, 1987. At that time, the show was publicly canceled.

According to Alice Kenley, the checks on hand were returned to the prospective purchasers, but no record was made of how many checks were returned or the amount of money involved in those returns. There was also testimony that some customers who had charged tickets on credit cards were able to have the charges canceled by the credit card issuer. There were, however, numerous customers who never received refunds for canceled performances, as Warren Star Theater had no funds to make any refunds. Frank Kenley acknowledged that no customers were ever informed of the precarious financial condition of the Warren Star Theater until the box office closed.

On January 29, 1988, the state of Ohio, by and through its counsel, the Ohio Attorney General, filed suit against the Warren Star Theater and Frank and Alice Kenley in Trumbull County Common Pleas Court. The suit was filed pursuant to the Consumer Sales Practices Act. The complaint alleged three counts against the defendants: (1) that the defendants committed unfair and deceptive acts or practices in violation of R.C. 1345.02(A) and Ohio Adm. Code 109:4–3–09(A)(2)(b) by accepting money from consumers for specific musical performances and then failing to make full refunds when the shows were canceled; (2) that the defendants knowingly took advantage of consumers' inability to protect themselves by failing to inform consumers of the precarious financial condition of the theater and substantial likelihood that the scheduled performances would be canceled, in violation of R.C. 1345.02 and 1345.03; and (3) that the defendants sold tickets to consumers after July 12, 1987, knowing no contract with Bobby Vinton existed, which was an unconscionable act in violation of R.C. 1345.03(B)(3). Defendants denied these allegations in their answer.

Warren Star Theater, and Frank and Alice Kenley, subsequently filed a third-party complaint against appellant and cross-appellee, Richard W. Kelley, Insurance Intermediaries, Inc., and Scottsdale Insurance Company. The third-party complaint alleged that said third-party defendants failed or neglected to provide "directors' and officers' liability insurance" even though such coverage had been requested and contracted for by the third-party plaintiffs. Third-party defendants, Insurance Intermediaries, Inc., and Scottsdale Insurance Company, were subsequently dismissed from the suit and are not involved in this appeal.

The record indicates that in August 1985 Frank Kenley, on behalf of Warren Star Theater, approached Richard W. Kelley regarding insurance coverage for theater operations. Included in the coverage requested was a policy for "directors and officers." It is apparent that the insurance actually obtained did not

include a liability policy for directors and officers, although Kelley testified that he believed said policy *was* included in the package. Furthermore, there is evidence that part of the premium paid was for directors' and officers' liability. From that point on, Frank Kenley believed that directors' and officers' liability coverage was in place.

Between the summer of 1985 and the time that the Warren Star Theater closed its doors in July 1987, neither Frank Kenley nor anyone else associated with the Warren Star Theater registered any complaint with respect to the insurance coverage in question. Kelley was never notified that the policy issued was inadequate in any respect.

On September 20, 1989, the trial court ordered the within matter to be heard by a referee pursuant to Civ.R. 53(A). The referee conducted hearings on the state's complaint on October 23 and October 24, 1989, and subsequently took additional testimony on the third-party complaint on November 27, 1989. At the close of the third-party plaintiff's case in chief and again at the close of all the evidence, Kelley moved for a directed verdict, but said motions were overruled.

On May 30, 1990, the referee issued his report, which included findings of fact and conclusions of law. The referee concluded that R.C. 1345.01 *et seq.* governs the business practices of the defendants, that the Warren Star Theater and Frank Kenley were "suppliers" within the meaning of R.C. 1345.01(C) in that they engaged in the business of effecting or soliciting consumer transactions, and that the Warren Star Theater and Frank Kenley engaged in unconscionable acts and practices in violation of R.C. 1345.03(B)(4). However, the referee concluded that Frank Kenley could not be held personally liable for refunds due consumers. Instead, the nonprofit corporation, Warren Star Theater, was responsible for the refunds due the consumers.

The referee also found Richard W. Kelley to be negligent in not obtaining directors' and officers' liability coverage as requested. Kelley, therefore, was liable for any damages assessed against Warren Star Theater because of the acts of its directors and officers. Damages totalled $43,618.50.

The referee recommended that Alice Kenley be dismissed as a party defendant, since she was merely an employee of the theater. Additionally, the referee recommended that a permanent injunction be issued enjoining the Warren Star Theater and Frank Kenley from doing any theatrical business in Ohio until full and complete restitution has been made to all injured consumers who claimed a refund in affidavit form.

Finally, the referee recommended that a judgment be issued in favor of Ohio against the Warren Star Theater in the amount of $43,618.50, and that judgment

should also be granted in favor of the Warren Star Theater against Richard W. Kelley for $43,618.50.

On June 15, 1990, Ohio and Richard W. Kelley each filed objections to the referee's report. On May 31, 1991, the trial court adopted, without change, the report of the referee.

All parties timely appealed from the trial court's judgment entry. The following assignments of error have been raised by appellant and cross-appellee, Richard W. Kelley:

"1. The referee erred to the prejudice of Third–Party Defendant/Appellant in overruling his motion for directed verdict made at the close of Third–Party Plaintiff/Appellee's case and/or at the close of all evidence.

"2. The referee erred to the prejudice of Third–Party Defendant/Appellant in failing to find as a conclusion of law and/or in failing to direct a verdict for Third–Party Defendant in that insurance coverage for violations of the Ohio Consumer Sales Protection [*sic* ] Act would be contrary to public policy and contrary to the legislative intent.

"3. The trial court erred to the prejudice of Third–Party Defendant/Appellant in entering judgment in favor of Third–Party Plaintiff against Third–Party Defendant where the report of the referee did not contain sufficient findings of fact and where said report contained contradictory findings of fact and conclusions of law."

The following assignment of error has been raised by appellee and cross-appellant, state of Ohio:

"The trial court erred to the prejudice of plaintiff-appellee/cross-appellant in failing to find defendant Frank Kenley personally liable for consumer restitution, civil penalties and attorney fees for his violations of the Ohio Consumer Sales Practices Act."

The following assignments of error have been raised by appellees and cross-appellants, Warren Star Theater and Frank Kenley:

"1. The referee erred in finding that Frank Kenley engaged in unconscionable acts in violation of Section 1345.03(B)(4) of the Ohio Revised Code by continuing to allow sales of tickets and acceptance of money for tickets when there existed a reasonable probability that all of the advertised musical concerts would not be performed.

"2. The referee erred in finding that Frank Kenley knew or should have known of the precarious financial condition of Warren Star Theater and did nothing to advise perspective [*sic* ] customers of this condition while continuing to authorize the sale of tickets to consumers.

"3. The trial court erred by ordering the defendant, Frank Kenley, to be permanently enjoined from entering into the sale of theater tickets or doing any theatrical business in the State of Ohio until full restitution is made to consumers."

In Richard W. Kelley's first assignment of error, he contends that the referee erred in overruling his motion for directed verdict made at the close of Warren Star Theater's case and at the close of all the evidence.

■ It is well settled that in order to establish negligence, a plaintiff must prove a duty owed by defendant to plaintiff, a breach of that duty, a showing that the breach was the proximate cause of the injury suffered by plaintiff, and that the plaintiff sustained damages.

■ In the case *sub judice,* the essence of the third-party claim of Warren Star Theater and Frank Kenley is that if Kelley had obtained directors' and officers' liability coverage as instructed, then the third-party plaintiffs would have been able to avail themselves of that coverage and, thus, would have been shielded from liability. Third-party plaintiffs alleged that it was negligent for Kelley to fail to obtain the requested coverage or at least inform them that they were not covered.

It is clear, however, that third-party plaintiffs failed to establish that the breach of the duty owed them by Kelley was the proximate cause of the injury they suffered. There was no evidence presented that, had directors' and officers' liability coverage been in place, third-party plaintiffs would have been protected by said policy.

In *Gabriele v. Reagan* (1988), 57 Ohio App.3d 84, 566 N.E.2d 684, the Twelfth District Court of Appeals upheld the trial court's dismissal of claims against an agent, stating:

" * * * In this case, the trial court found that appellant failed to prove that if the claim had been presented to the insurance company, it would have been deemed meritorious. The court further found that there was no evidence that the claim would have been covered, or of the amount recoverable. After a review of the record, we agree with the findings of the trial court.* * * " *Id.* at 88, 566 N.E.2d at 688.

Similarly, in the instant cause, third-party plaintiffs failed to present any evidence that a claim presented to the insurance company under a directors' and officers' liability policy would have been deemed meritorious.

Additionally, third-party plaintiffs produced no evidence to establish what the terms of the coverage would have been on the directors' and officers' liability policy that they had requested.

In *Stuart v. Natl. Indemn. Co.* (1982), 7 Ohio App.3d 63, 7 OBR 76, 454 N.E.2d 158, the Eighth District Court of Appeals established the measure of damages in a failure-to-obtain-coverage case. The court held, at 69, 7 OBR at 82, 454 N.E.2d at 165:

"Ordinarily, the measure of damages for tortious misrepresentation that insurance has been provided is the loss sustained by the failure to provide that coverage. In other words, the defendant sales agency and its president are liable for the amount the insurer would have owed under the terms of the supposed insurance contract.* * *"

Thus, the third-party plaintiffs not only failed to show that their actions would have been covered by a directors' and officers' liability policy, they also failed to show in what amount such acts would have been covered.

■ Civ.R. 50(A)(4) requires a directed verdict where the court finds that upon any determinative issue reasonable minds could reach only a conclusion adverse to the nonmoving party. The evidence must be construed most strongly in favor of the party against whom the motion is directed. In the present case, third-party plaintiffs presented no evidence on the critical issue of exactly what a directors' and officers' liability policy, if issued, would or would not cover. Thus, a directed verdict should have been granted in favor of Richard W. Kelley.

Appellant's first assignment of error is well taken.

■ In the second assignment of error, appellant, Richard W. Kelley, asserts that the referee erred in failing to find as a conclusion of law that insurance coverage for violations of the Ohio Consumer Sales Practices Act would be contrary to public policy and contrary to the legislative intent.

Appellant's argument is without merit. Appellant relies on the Ohio Supreme Court's decision in *Harasyn v. Normandy Metals, Inc.* (1990), 49 Ohio St.3d 173, 551 N.E.2d 962. However, in that case the court held:

" * * * [P]ublic policy does not prohibit an employer from securing insurance against compensatory damages sought by an employee in tort where the employer's tortious act was one performed with the knowledge that injury was substantially certain to occur." *Id.* at 177, 551 N.E.2d at 966.

Thus, *Harasyn* provides no support for appellant's position. Nor is appellant able to provide this court with any other authority to support his argument.

Appellant's second assignment of error is without merit.

In the third assignment of error, appellant, Richard W. Kelley, maintains that the trial court erred in entering judgment in favor of third-party plaintiffs because the referee's report did not contain sufficient findings of fact, but, rather, contained contradictory findings of fact and conclusions of law.

Within this assignment of error, appellant raises the same issues presented in his first assignment of error, but, instead of claiming that the referee erred in reaching his conclusions, appellant now argues that the trial court erred in overruling his objections to the referee's report, objections which were based on the same arguments.

Therefore, for the same reasons advanced in this court's discussion of appellant's first assignment of error, appellant's third assignment of error is also well taken.

In the sole cross-assignment of error raised by cross-appellant, state of Ohio, it is alleged that the trial court erred in failing to find defendant, Frank Kenley, personally liable for consumer restitution, civil penalties and attorney fees for his violation of the Ohio Consumer Sales Practices Act.

In the referee's report, Kenley was found to have engaged in unconscionable acts and practices in violation of R.C. 1345.03(B)(4). The referee concluded, however, that Kenley could not personally be held liable because of the protection afforded by R.C. 1702.55(B).

■ The referee's conclusion that Kenley engaged in unconscionable acts and practices is amply supported by the record. At all times relevant to the acts in question, Kenley was one of only two trustees of the corporation. He was also the president, treasurer and acting secretary of the corporation as well as the general manager of the theater. There was no vice-president. In essence, Kenley ran the entire operation. Meetings of the corporate trustees were rare.

It is evident that tickets were sold for the Bobby Vinton show even after the advance fee was not paid and Bobby Vinton's production company informed Frank Kenley that the contract with Vinton was canceled. This was a clear violation of the Consumer Sales Practices Act.

■ It has been held that a corporate officer is individually liable for his acts which violate the Consumer Sales Practices Act as set forth in R.C. Chapter 1345. *Quality Carpet Co. v. Brown* (C.P.1977), 6 O.O.3d 185; *Gayer v. Ohio Business Trading Assn.* (July 7, 1988), Cuyahoga App. No. 54892, unreported, 1988 W.L 87629. Thus, it is clear that Kenley should be held personally liable for his actions which violated the Consumer Sales Practices Act. The referee's report, which was adopted by the trial court, incorrectly stated that Kenley was afforded protection by R.C. 1702.55(B).

R.C. 1702.55(B) applies only to trustees, and lists three instances in which a trustee would be liable to the corporation. There is no indication that this is a comprehensive or exhaustive list of acts that are prohibited. The acts listed are: (1) a distribution of assets to members contrary to law or the articles; (2) a

distribution of assets to persons other than creditors during the winding up of the affairs of the corporation, on dissolution or otherwise, without the payment of all known obligations of the corporation; and (3) the making of loans, other than in the usual conduct of its affairs or in accordance with provisions therefor in the articles, to an officer, trustee, or member of the corporation. R.C. 1702.55(B) does not apply to corporate officers, nor does it address acts which violate the Consumer Sales Practices Act.

Thus, it is clear that R.C. 1702.55(B) does not provide protection for Frank Kenley.

For the foregoing reasons, Ohio's sole assignment of error is well taken.

In the first two assignments raised by appellees and cross-appellants, Warren Star Theater and Frank Kenley assert that the referee erred in finding that Kenley engaged in unconscionable acts in violation of the Consumer Sales Practices Act. This issue was raised and addressed within Ohio's sole assignment of error and need not be addressed again. There was ample evidence to support the referee's finding that Kenley violated the Consumer Sales Practices Act. Thus, these two assignments of error are without merit.

In their third assignment of error, Warren Star Theater and Frank Kenley allege that the trial court erred in permanently enjoining Kenley from entering into the sale of theater tickets or doing any theatrical business in Ohio until full restitution is made to consumers.

Since it is clear to this court, as it was to the trial court, that Frank Kenley engaged in unconscionable acts in violation of the Consumer Sales Practices Act, there is no valid reason to overturn the court's decision to enjoin Kenley from conducting further theater business until full restitution has been made.

Kenley's third assignment of error is without merit.

Accordingly, the judgment of the trial court is reversed and the cause is remanded to the trial court to enter judgment consistent with this opinion.

Costs of this appeal are to be assessed to appellees and cross-appellants, Warren Star Theater and Frank Kenley.

*Judgment accordingly.*

FORD, P.J., and CHRISTLEY, J., concur.