In re Patricia L. GERDES, Debtor.

Donald F. Harker, III,
Trustee, Plaintiff,

v.

Center Motors, Inc., Defendant.

Bankruptcy No. 98–30587.
Adversary No. 99–3036.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

March 8, 2000.

Donald F. Harker, III, Dayton, OH, for plaintiff.

W. Michael Conway, Conway & Hall, L.P.A., Dayton, OH, for defendant.

## DECISION AND ORDER DENYING TRUSTEE'S REQUEST TO AVOID TRANSFER

WILLIAM A. CLARK, Bankruptcy Judge.

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the standing General Order of Reference entered in this District. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(H).

This matter is before the court upon the Complaint to Avoid Fraudulent Transfer filed by Donald F. Harker, III, Trustee ("Trustee") [Adv.Doc. # 1–1] and the Answer of Defendant, Center Motors, Inc. to Complaint to Avoid Fraudulent Transfer [Adv.Doc. # 3–1]. A hearing on the Trustee's complaint was held on October 13, 1999. After the hearing and lengthy negotiations between the parties, the parties submitted post-hearing briefs in February of 2000. [Adv.Docs. 15–1 and 16–1]. The following decision and order constitutes the court's findings in accordance with Federal Rule of Bankruptcy Procedure 7052(a).

### FINDINGS OF FACT

This dispute arises from a September 30, 1997 payment by the Debtor, Patricia Gerdes ("Debtor"), to the Defendant, Center Motors, Inc. ("Center Motors"), which occurred within one year of the Debtor's bankruptcy filing. The central issue in the dispute is whether the Debtor received reasonably equivalent value for the payment which satisfied the debt of a third-party, Fairfield Motor Company, Inc. ("Fairfield").

Prior to filing her bankruptcy petition on February 4, 1998, the Debtor was president and sole shareholder of Fairfield, an Ohio corporation in the business of selling used cars. The Debtor ran the business with her son, Michael Hamilton. In March of 1997, Fairfield bought a 1965 Buick Grand Sport from the Defendant, Center Motors. Although Fairfield took possession of the car, Center Motors was not paid the full balance at that time and retained title pending full payment for the Buick.

The Debtor's son resold the car through Fairfield in June of 1997. The purchaser, David Spencer, paid the equivalent of approximately $15,000.00 for the car. The payment was made by Spencer in the form of $9,000.00 in cash and the turnover of two used cars. The money received from Spencer was not used to pay off Fairfield's debt to Center Motors and was, instead, used to pay other bills. Consequently, although Spencer took possession of the Buick, he could not acquire title to the vehicle because Center Motors had not been paid the balance owed by Fairfield. Both Center Motors and Spencer requested Fairfield to pay the balance so that the car title could be transferred.

The Debtor paid Center Motors the $8,500.00 balance owed by Fairfield for the Buick by cashier's check dated September

30, 1997. [Adv.Doc. #1–1, Ex. A.] Although the cashier's check noted that the payment was made by the Debtor on behalf of Fairfield, the parties do not dispute that the money came directly from proceeds paid to the Debtor for the settlement of a personal injury lawsuit. In addition, neither party disputes that the Debtor was no longer associated with Fairfield at the time this payment was made. Prior to paying Center Motors, the Debtor had resigned as an officer of Fairfield in August of 1997 and surrendered ownership of her stock in the corporate business to her son.

After receiving full payment for the Buick, Center Motors relinquished title. Immediately upon receiving the title to the Buick, the Debtor paid the title fees and sales taxes due and delivered the title to David Spencer. The Debtor's testimony makes clear that the Debtor felt personally obliged to pay these costs and deliver title to the purchaser.

After the Debtor filed her bankruptcy petition on February 4, 1998, the Trustee filed a complaint requesting the avoidance and turnover of the $8,500.00 transfer to Center Motors. The Trustee asserts that the Debtor paid Center Motors out of her personal proceeds within a year prior to her bankruptcy and received little or no value in return for the payment of this third-party's debt. Center Motors asserts that the Debtor received reasonably equivalent value in the form of the transfer of the vehicle's title which allowed the Debtor to complete the transfer to the purchaser, David Spencer, and pay the taxes and other costs associated with the transaction. Thus, Center Motors asserts that the Trustee is not entitled to recover the $8,500.00 payment.

### CONCLUSIONS OF LAW

Under the Bankruptcy Code, a trustee may avoid a transfer of a debtor's property made within one year prior to the filing of the bankruptcy petition if: (1) the debtor received less than a reasonably equivalent value in exchange for such transfer or obligation, and (2) the debtor was insolvent on the date that such transfer was made or became insolvent as a result of such transfer or obligation. *See* 11 U.S.C. § 548(a)(1)(B). Thus, a trustee is afforded power to avoid a transfer made within the requisite year prior to the bankruptcy when that transfer diminishes "the assets of the debtor to the detriment of all creditors." *Enwotwen Indus., Inc. v. Brookstone Limited Partnership (In re Newtowne, Inc.)*, 157 B.R. 374, 378 (Bankr. S.D.Ohio 1993). The trustee carries the burden of proving each element of a fraudulent transfer. *Id.*

In this case, there is no dispute that the Debtor transferred personal funds received as proceeds from a personal injury settlement to Center Motors within five months of the filing of her bankruptcy petition. In addition, Center Motors has not disputed that the Debtor was insolvent at the time of the September 30, 1997 transfer. Thus, the issue for the court to determine is whether the Debtor received reasonably equivalent value for using her personal funds to pay third-party Fairfield's debt.

In order to determine whether a debtor receives reasonably equivalent value, the court must compare the value received to the value given up by the debtor. *Newtowne*, 157 B.R. at 378. "If the debtor's net worth is maintained, its creditors cannot complain of the transfer." *Id.* Both direct and indirect benefits should be considered by the court in determining whether reasonably equivalent value has been received. *Id.* at 378–379.

When a debtor pays the debts of a third-party, the debtor generally receives little or no value in return. *See Central Nat'l Bank of Cleveland v. Coleman (In re B–F Building Corp.)*, 312 F.2d 691, 694 (6th Cir.1963) ("In the usual case … the payment of another's debt is held to be a transfer without fair consideration."); *see also Hall v. Arthur Young and Co. (In re Computer Universe, Inc.)*, 58 B.R. 28, 30

(Bankr.M.D.Fla.1986). As such, the payment of third-party debts by a debtor is generally avoidable by the trustee. *See Computer Universe,* 58 B.R. at 30. Based on this concept, courts have avoided payments by a debtor to pay a third-party corporation's debts. *See, e.g., Leibowitz v. Parkway Bank & Trust Co. (In re Image Worldwide, Ltd.),* 139 F.3d 574, 578 (7th Cir.1997) (no reasonably equivalent value given to a debtor corporation who guaranteed the debts of an affiliate corporation); *C–T of Virginia, Inc. v. PaineWebber Inc. (In re C–T of Virginia, Inc.),* 124 B.R. 700, 702 (W.D.Va.1990) (bankruptcy trustee may avoid transfers made by bankrupt to pay valid debts of corporate affiliate); *Computer Universe,* 58 B.R. at 30 (recognizing that the payment of a shareholder debt by a corporation, or visa-versa, is generally avoidable by the trustee).

■ While courts have recognized that a debtor's payment of third-party debts usually carries no direct economic benefit for the debtor, courts have been willing to consider indirect benefits received by a debtor if those benefits are fairly concrete. *Image Worldwide,* 139 F.3d at 578. For example, a debtor may receive an indirect benefit of reasonably equivalent value if the debtor receives the use of the goods or services for which the debtor paid. *See Computer Universe,* 58 B.R. at 31; *Newtowne,* 157 B.R. at 379. Another such situation might occur when the debtor and the third-party for whom the debt is paid are so related and share such an identity of interests that the benefits of one will benefit the other to some degree. *Newtowne,* 157 B.R. at 379.

■ In this case, there is little evidence of a direct economic benefit to the Debtor for payment of Fairfield's debt. However, Center Motors argues that the Debtor and Fairfield were so intertwined that the benefit to Fairfield, in the form of Center Motors' relinquishment of title to the Buick, included significant indirect benefits to the Debtor.

Center Motors argues that the Debtor correctly believed she was personally obli-

gated to facilitate the transfer of title from Center Motors to the purchaser, David Spencer, and pay the taxes and other fees associated with the transaction. Indeed, a shareholder or officer of a corporation may be personally liable for violations of the Ohio Consumer Sales Practices Act such as the failure to provide a purchaser, like David Spencer, with a certificate of title within forty (40) days after the purchase. Ohio Rev.Code § 4505.181(B) and (E) *in conjunction with* Ohio Rev.Code § 1345.02; *see also Janos v. Murduck,* 109 Ohio App.3d 583, 588, 672 N.E.2d 1021, 1024 (Ohio Ct.App.1996) (holding that an individual shareholder may be personally liable for using a corporation to engage in unfair consumer sales practices if the plaintiff can meet the elements necessary to pierce the corporate veil); *State ex rel. Fisher v. Warren Star Theater,* 84 Ohio App.3d 435, 443, 616 N.E.2d 1192, 1198 (Ohio Ct.App.1992) (holding that a corporate officer, especially one that is the president, treasurer and acting secretary, may be individually liable for his acts in violation of the Consumer Sales Practices Act). The penalty for such a violation can include recision of the purchase by the purchaser or, even, treble damages. Ohio Rev.Code § 1345.09.

In addition, the Debtor correctly believed she was personally obligated to pay the sales tax due that had been collected from the purchaser. Failure to pay the tax collected from the purchaser of an automobile can result in the dealer being held liable for the tax. Ohio Rev.Code § 5739.13(A). An employee or officer charged with responsibility for making the payment of the sales tax on behalf of the dealer may also be held personally responsible. Ohio Rev.Code § 5739.33; *see also Skuratowicz v. Tracy,* 80 Ohio St.3d 52, 54, 684 N.E.2d 324, 326 (Ohio 1997) (noting that the General Assembly, through the enactment of Ohio Rev.Code § 5739.33, intended to hold officers of a corporation personally responsible for payment of sales tax and this provision does not permit the officers to escape liability by dele-

gating those duties to others). It is clear that at the time of the purchase of the Buick by David Spencer, the Debtor was still the sole shareholder and president of Fairfield making her personally obligated for completing the transaction and paying the tax collected from the purchaser. By paying Fairfield's debt to Center Motors, completing the transfer of title to David Spencer and paying the sales tax associated with the transaction, the Debtor attempted to comply with the law and avoid personal liability. The court deems the avoidance of liability to be a significant indirect benefit to the Debtor obtained from payment of Fairfield's debt to Center Motors. Consequently, the court concludes that, because the Debtor received reasonably equivalent value in the form of the avoidance of personal liability associated with Fairfield's debt, the payment to Center Motors is not an avoidable transfer.

**WHEREFORE,** the Trustee's request to avoid the $8,500.00 payment to Center Motors **is denied.**

It is so ordered.