{¶ 57} I respectfully dissent from the majority opinion. The majority opinion affirms the trial court's directed verdict for DeCesare who the Suttles sued personally for fraud, gross negligence, and unfair and deceptive trade practices in the construction of their home. The Suttles describe the condition of their house as literally sinking into their basement. Moreover, they described his construction of their house as a disaster.
 {¶ 58} At the outset, I must point out that this court, in deciding Suttles v. DeCesare (July 5, 2001), Cuyahoga App. No. 77753, made no conclusions regarding DeCesare's personal liability in the construction of the Suttles' home. The majority in that opinion merely concluded that the arbitrator's decision absolving Decesare of personal liability was in error because DeCesare was never a party individually to the arbitration clause in the construction agreement. Consequently, the lawsuit against DeCesare was alive and open to resolution.
 {¶ 59} This majority opinion concludes insufficient evidence existed to pierce the corporate veil and concludes DeCesare did not commit fraud, gross negligence, or unfair and deceptive trade practices. In substance, it agrees with the trial court that at best the Suttles proved a breach of contract claim against the corporation N.T.M., Inc., and nothing more.
 {¶ 60} This conclusion ignores the fact that reasonable minds could differ as to whether DeCesare exercised control over his one-man company in a manner as to commit fraud or an illegal act. In BelvedereCondominion Units Owners' Ass'n v. R.E. Roark Cos. (1993),67 Ohio St.3d 274, Justice Wright pointed out that the evidence missing in Belvedere was that the control over the company by Roark proximately caused the injury to the Condominium owners. Here, the Suttles' expert testified the support structure was simply inadequate. Additionally, the Suttles testified DeCesare stated to them that the structure could be expanded by 3 feet. This expansion included the bathroom, which was expanded 2 feet to accommodate the hot tub. The night the Suttles first attempted to use the hot tub, Mr. Suttle testified after filling it half full, the tub separated from the wall and the floors cracked. No evidence existed in the record to dispute the fact that DeCesare represented to the Suttles that the additional 3 feet expansion was workable. I note that it was DeCesare who made the representations, not his contractors, which was the case in Grayson.
 {¶ 61} This court in Grayson v. Cadillac Builders, Inc. (Sept. 14, 1995), Cuyahoga App. 68551, pointed out the Graysons had failed to state or prove any misrepresentations by their builder; consequently, they could not pierce the corporate veil. In Belvedere, the Ohio Supreme Court made it clear that the builder has to represent the company in a way to defraud the plaintiffs to pierce the corporate veil. Here, the evidence showed a misrepresentation as to the expansion; thus, reasonable minds could differ as to whether N.T.M., Inc. was a corporate fiction used to manifest a fraud on the Suttles.
 {¶ 62} I believe the majority would agree that evidence existed that DeCesare and N.T.M., Inc. were fundamentally indistinguishable. The Suttles testified on one occasion they paid $6,300 to DeCesare's personal bank account further evidencing the corporate fiction.
 {¶ 63} I also note that in interpreting Belvedere's second prong, this court, in Alside Supply Co. v. Wager (1993), 89 Ohio App.3d 539, pointed out this prong does not require ongoing fraud, but only that the fraud result from maintaining the corporate fiction. In Grayson, the sub-contractors working for the corporation made the representations and the corporation failed to oversee or control their work. Here, DeCesare made the fraudulent representations to the Suttles, not the subcontractors.
 {¶ 64} Finally, in this case, the Suttles argue DeCesare was incompetent to build this house. He agreed to things that no expert in the field would have agreed to especially the expansion. Suttles testified he represented himself as a member of Cleveland Building Industry Association (CBIA) and that he was giving them a B.I.A. Warranty for the work, which doesn't exist. Additionally, DeCesare was not a CBIA member. The Suttles testified this was their first home and these representations among others induced them to contract with DeCesare; a person they later learned was nothing more than a liquor salesman pretending to be a builder.
 {¶ 65} The Suttles are consumers and are entitled to protection from unfair and deceptive trade practices.
 {¶ 66} In Grayson, we said:
 {¶ 67} "[A] corporate officer may be held individually liable for his acts which violate the Consumer Sales Practices Act. Gayer v. OhioBusiness Trading Association (July 7, 1988), Cuyahoga App. No. 54897, unreported (where corporate officer held personally misrepresented to the plaintiffs that their home would be sided with aluminum siding). See, also, State ex rel. Fisher v. Warren Star Theater (1992),84 Ohio App.3d 435, 616 N.E.2d 1192 (where corporate officer of non-profit corporation held personally liable for selling tickets after show was cancelled); State ex rel. Fisher v. Harper (1993),83 Ohio App.3d 754, 615 N.E.2d 733 (where corporate officer held personally liable for pyramid sales scheme which he promoted and from which he benefitted). In order to hold a corporation officer personally liable for his actions in violation of the Consumer Sales Practices Act, the evidence must show the officer took part in the commission of the act, specifically directed the particular act to be done, or participated or cooperated therein. State ex rel. Fisher v. American Courts, Inc.
(July 21, 1994), Cuyahoga App. No. 65939, unreported."
 {¶ 68} We further explained:
 {¶ 69} "The Consumer Sales Practices Act does not change the existing common law of tort, nor does it change the common law rule with respect to piercing the corporate veil. A corporate officer may not be held liable merely by virtue of his status as a corporate officer. It does, however, create a tort which imposes personal liability upon corporate officers for violations of the act performed by them in their corporate capacities. See, also, Roberts and Martz, Consumerism Comes of Age: Treble Damages and Attorney Fees in Consumer Transactions — The Ohio Consumer Sales Practices Act (1981), 42 Ohio St.L.J. 927, 932-933. Grayson, supra, fn. 1."
 {¶ 70} This matter should have gone to the jury for a final resolution; consequently, I would reverse the trial court and order a new trial.