NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0911n.06

No. 12-4206

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

In re: KAREN E. NEAL,

    -Debtor,

ANDREW W. SUHAR,

    -Plaintiff-Appellant,

v.

CRAIG BRUNO,

    -Defendant-Appellee.

                                 /

**FILED**
Oct 23, 2013
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE BANKRUPTCY APPELLATE PANEL FOR THE SIXTH CIRCUIT

BEFORE:     KEITH, CLAY, and KETHLEDGE, Circuit Judges.

**CLAY, Circuit Judge.** The trustee of a bankrupt estate, Plaintiff Andrew W. Suhar, appeals the decision of the Bankruptcy Appellate Panel ("BAP"), which reversed in part the order of the bankruptcy court and ordered the debtor's ex-husband, Defendant Craig Bruno, to pay Plaintiff $4,532.98 for a fraudulent transfer of property arising under Defendant's and the debtor's divorce agreement. Plaintiff asserts that the BAP erred in failing to consider the debtor's assumption of credit card debt and a private loan accumulated during the marriage as a fraudulent transfer under the Bankruptcy Code, 11 U.S.C. §§ 544 and 548, and Ohio Revised Code § 1336.05(A). For the following reasons, we **AFFIRM** the original decision of the bankruptcy court and reinstate its award of $47,635.27 to the bankruptcy estate.

## BACKGROUND

### A.     Factual Background

The following facts were established by the bankruptcy court and are uncontested on appeal. The debtor, Karen Neal, and Defendant dissolved their marriage in September 2008 with a decree of dissolution, which incorporated a separation agreement therein.   The separation agreement divided the debts and assets of the couple as follows:   Neal retained her pension worth approximately $18,000 free and clear of any claim by Defendant, and assumed a $28,000 loan from her parents, and over $60,0000 in credit card debt, all of which was debt incurred mostly during the marriage and used toward household expenses; Defendant retained the marital home, worth $77,500 and encumbered by a $50,000 mortgage.[1]  Approximately six months after the separation, Neal filed for bankruptcy.

### B.     Procedural History

Plaintiff, as trustee of the estate seeking to avoid the transfers made in the separation agreement pursuant to 11 U.S.C. §§ 544 and 548, and Ohio Revised Code § 1336.05(A), filed the instant action in bankruptcy court against Defendant.  Plaintiff argued that Neal received less than reasonably equivalent value for the transfer of marital assets and her assumption of marital debt. The bankruptcy court agreed and ordered Defendant to pay $47,635.27—the reasonable value of

---

[1]There were also several vehicles that Defendant retained while Debtor acquired only one vehicle.  However, no value was assigned to any of these vehicles and, therefore, they were not factored into the court's determination of what value in marital property was transferred between the parties. This determination is not challenged on appeal.

Defendant's half of the marital credit card debt[2] and loan from Neal's parents, and the surplus Defendant received from the exchange of Neal's interest in the marital home for his interest in her pension. Defendant appealed the bankruptcy court's decision.

On appeal, the BAP agreed that Defendant had not provided Neal with reasonably equivalent value for her transfer of assets under the separation agreement, but disagreed with the bankruptcy court's inclusion of the marital credit card debt and loan in calculating the value of property that was fraudulently transferred. The BAP reasoned that Neal did not confer a benefit on Defendant by assuming said debt because there was no evidence that Defendant was contractually obligated on the debt; and if he was, the separation agreement could not relieve him of his obligation. The BAP therefore reduced the award to Plaintiff to $4,532.98, the surplus that Defendant received from the exchange of Neal's interest in the marital home for his interest in her pension. Plaintiff timely appealed to this Court, which has jurisdiction pursuant to 28 U.S.C. § 158(d)(1).[3]

## DISCUSSION

### A.     Standard of Review

On appeal from an order of the BAP, we "evaluat[e] the bankruptcy court's decision directly, without being bound by the [BAP]'s legal determinations." *In re Gardner*, 360 F.3d 551, 557 (6th

---

[2]The bankruptcy court found that $2,558.91 of the credit card debt was incurred after the dissolution of the marriage and, therefore, was not marital property.

[3]Defendant claims that this appeal may be moot because the bankruptcy court amended the order of turnover on October 1, 2012, pursuant to the BAP's decision, which was nine days before Plaintiff's timely filed notice of appeal. However, the BAP had yet to issue its mandate so as to relinquish jurisdiction back to the district court. *See Thompson v. Bell*, 580 F.3d 423, 444 (6th Cir. 2009); *see also Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam). Consequently, the trial court's amendment is null and void for the reasons set out in this opinion.

Cir. 2004).  The bankruptcy court's determination as to whether a debtor received reasonably equivalent value is a question of fact that we review for clear error.  *In re Global Technovations, Inc.*, 694 F.3d 705, 720 (6th Cir. 2012).  Both the BAP and bankruptcy court found that Neal had not received reasonably equivalent value, which is not contested on appeal.  The issue before us is whether the bankruptcy court properly calculated the reasonably equivalent value to be paid to the estate, which is a legal conclusion we review *de novo*.  *See id.* at 717.

**B.    Legal Framework**

Under 11 U.S.C. § 548(a), a  trustee may "avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor" as fraudulent upon a showing that the debtor: (1) incurred the obligation or transferred the property within two years before filing for bankruptcy, (2) received less than "reasonably equivalent value" for the property or obligation, and (3) "was insolvent on the date that such transfer was made or became insolvent as a result of such transfer or obligation."  *See id.* § 548(a)(1).  At issue in this appeal is the second prong.

"Reasonably equivalent value" is not defined in the Bankruptcy Code; however, we note that a debtor is not required to collect a "dollar-for-dollar equivalent" to meet this requirement. *In re Advanced Telecomm. Network, Inc.*, 490 F.3d 1325, 1336 (11th Cir. 2007).  Instead, we look to the net effect of the transfer or obligation on the debtor's estate and, more specifically, on the remaining funds available to the unsecured creditors.  *In re Congrove*, 222 F. App'x 450, 454 (6th Cir. 2007); *see also In re Northern Merchandise, Inc.*, 371 F.3d 1056, 1059 (9th Cir. 2004).  "As long as the unsecured creditors are no worse off because the debtor, and consequently the estate, has received an amount reasonably equivalent to what it paid, no fraudulent transfer has occurred."  *Congrove*,

222 F. App'x at 454 (quoting *In re Jeffrey Bigelow Design Grp., Inc.*, 956 F.2d 479, 484 (4th Cir. 1992)). Accordingly, the assumption of a third party's debt by a debtor who does not receive a benefit in exchange is a fraudulent transfer. *See In re Southern Health Care of Ark., Inc.*, 309 B.R. 314, 319 (8th Cir. BAP 2004); *see also In re B-F Bldg. Corp.*, 312 F.2d 691, 694 (6th Cir. 1963) (collecting cases). Where a transfer can be avoided, the bankruptcy court may order the transferee to pay to the trustee the value of the transfer made by the debtor.[4] 11 U.S.C. § 550(a)(1).

## C.     Analysis

At issue here is whether the assumption of an ex-spouse's interest in marital debt that is joint debt only by virtue of marital law constitutes a fraudulent transfer. The BAP and bankruptcy court acknowledged that joint debt was to be split evenly in calculating the value conferred by Defendant's and Neal's separation agreement. Indeed, both courts factored in the mortgage on the marital home to determine that the former spouses were entitled to equal shares of the home's equity of $27,500. However, it appears that the BAP distinguished joint debt on which both parties are contractually obligated from debt that is joint only by virtue of the parties' marital relationship. The BAP reasoned that the latter should not be included in the reasonably equivalent-value assessment, because Neal's assumption of debt for which Defendant was not contractually obligated—e.g., her credit card debt and loan from her parents—did not confer a benefit on Defendant. We find this

---

[4]A separate analysis of Ohio Revised Code § 1336.05 is not necessary because it contains the same "reasonably equivalent value" requirement as 11 U.S.C. § 548(a)(1). *See In re Dirks*, 407 B.R. 442, at *7 (6th Cir. BAP 2009) (table decision). Although there is no requirement that the transfer occur within two years of bankruptcy under Ohio law, this difference is immaterial here.

distinction to be immaterial when considering the property interests of ex-spouses in bankruptcy. *See In re Fordu*, 201 F.3d 693, 700–02 (6th Cir. 1999).

We look to Ohio law to determine Neal's property rights. *See id.* at 700. Ohio courts count both assets and liabilities in determining the marital property to be distributed between former spouses. *Kehoe v. Kehoe*, 974 N.E.2d 1229, 1233 (Ohio Ct. App. 2012) ("A trial court must take into account marital debt when dividing marital property."); *see also* Ohio Rev. Code § 3105.171(F)(2). And importantly, it is Ohio's marital law (as opposed to contract or other nonmarital law) that governs what constitutes the joint debt in a marital relationship; any debts incurred during the marriage are presumed to be marital in nature unless it can be proven that they are separate. *Kehoe*, 974 N.E.2d at 1233. Indeed, "loan[s] taken for any expenditure married couples make, such as buying a car or groceries or paying for cable television" constitute marital debt to the extent they are incurred during the marriage, and without regard for which spouse assumed the debt under the terms of the loan. *Smith v. Emery-Smith*, 941 N.E.2d 1233, 1240 (Ohio Ct. App. 2010) (emphasis omitted) (quoting *Nemeth v. Nemeth*, No. 2007-G-2791, 2008 WL 2582517, at *8 (Ohio Ct. App. June 27, 2008)); *see also Kehoe*, 974 N.E.2d at 1233 (finding that a student loan incurred by one spouse for the couple's child was marital debt since it was incurred during the marriage).

In the instant case, Neal's credit card debt and loan from her parents were incurred during the marriage and used for marital purposes—day-to-day household expenses such as groceries, personal items for both her and Defendant, cleaning supplies, outings, etc. The loan from her parents was specifically taken out to pay off a home equity line of credit that was used for household

expenses. In the absence of any evidence or argument that this debt was separate, it was indeed marital in nature and, therefore, Defendant was equally responsible for it. *See Kehoe*, 974 N.E.2d at 1233; *Smith*, 941 N.E.2d at 1240.

Contrary to the BAP's assertion, it simply does not matter that Defendant was not liable for the debt under nonmarital law. We have previously held that courts must look to marital law specifically to determine the property interests of ex-spouses in bankruptcy court. *See Fordu*, 201 F.3d at 700–02 (finding that husband had interest in wife's lottery winnings under Ohio marital law despite not having a property right under nonmarital law). Ohio marital law makes it clear that debt accumulated during the marriage and for the benefit thereof is a joint obligation even where the spouse is unaware of the debt. *See Kaletta v. Kaletta*, No. 98821, 2013 WL 1791809, at *13 (Ohio Ct. App. April 25, 2013) (finding spouse equally responsible for student loan debt taken out by ex-spouse despite plaintiff's argument that she was unaware of debt and did not consent to it); *Nemeth*, 2008 WL 2582517, at *9 (stating that a "[spouse]'s lack of knowledge is irrelevant to the classification of the debt as marital"). Thus, in the instant case, Neal relieved Defendant of an obligation he had pursuant to Ohio's marital law without any benefit in return, a classic example of a fraudulent transfer in bankruptcy. *See In re B-F Building Corp.*, 312 F.2d at 694.

Nevertheless, the BAP reasoned that equitable allocation of marital debt may not be as relevant to a fraudulent-transfer analysis for bankruptcy proceedings as it may be to a marriage dissolution proceeding. The BAP stated that it may be unfair to consider liabilities in cases, such as here, in which the liabilities greatly exceed the assets. However, to exclude Neal's assumption of the marital debt from consideration undermines the purpose of 11 U.S.C. § 548; the unsecured

7

creditors are surely worse off and less likely to be paid by Neal's assumption of Defendant's portion of the marital debt. To find otherwise would promote the obviously deceptive practice of permitting divorcing spouses to unjustifiably depart from the practice of equitable distribution just to defraud one of the spouse's creditors.

Therefore, the BAP erred in not including the credit card debt and private loan in its reasonably equivalent value assessment. The bankruptcy court originally found that $58,204.57 of the credit card debt and the $28,000 loan was marital in nature and, thus, split the sum of said debt to find that each ex-spouse was responsible for $43,102.29. We agree with the bankruptcy court that Defendant's failure to provide Neal any value for assuming of his portion the debt amounted to a fraudulent transfer. This figure added with the surplus Defendant obtained by the transfer of assets, $4,532.98, amounts to the total fraudulent transfer of $47,635.27 in value as determined by the bankruptcy court.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the bankruptcy court and reinstate the original award of $47,635.27.

**DAMON J. KEITH, dissenting.** I agree with the majority that state law determines Bruno's property rights. The type of state law that determines the Bruno's property rights with regard to the unsecured debt, however, is contract law, not marital law. Specifically, the terms of the creditors' contracts with Bruno control here. As Suhar's own expert testified, the credit card companies' right to repayment is controlled solely by their contracts with Debtor and Bruno and their rights to collect from Bruno were not altered by the terms of the marriage dissolution agreement. Credit card companies are not bound by a domestic court's division of liability. Therefore, the Debtor did not incur an obligation within the meaning of 11 U.S.C. § 548(a) when she assumed liability for the credit card debt in the dissolution agreement. There was no evidence in the record about the contractual terms of the loan from the Debtor's parents; we only know that it was given directly to the Debtor. Because the rights of the unsecured creditors to collect from Bruno were not altered by the terms of the marriage dissolution agreement, the Debtor did not transfer any asset to him when she purported to assume liability for the unsecured debt.

Affirming the bankruptcy court's holding in this case allows the creditors to use bankruptcy law to circumvent the shortcomings of their own contracts. The credit card companies drafted the contracts that are at issue here. So, although the usual rule is that married parties would both be liable for marital debt, the evidence unequivocally indicated that the credit card companies drafted around that default legal rule and their contract rights were not altered by the terms of the marriage dissolution agreement.

9

Based on the bankruptcy court's findings of fact, the Debtor transferred assets to Bruno worth $4,532.98 more than the assets she received from him in the marriage dissolution. Consequently, the Debtor's unsecured creditors would have had $4,532.98 more available to them in her bankruptcy estate had she received reasonably equivalent value for the transfers she made in the marriage dissolution. Therefore, although the Debtor and Bruno agreed to the terms of the dissolution agreement, in my view, Suhar is entitled to recover $4,532.98 from Bruno on behalf of the Debtor's unsecured creditors under 11 U.S.C. § 544.

My view of this case would not create a *per se* rule that marital debt assumed by one party in a marriage dissolution agreement can always be discharged in bankruptcy. My view is based mainly on the facts in the record, not a new legal rule. The Trustee's own expert testified that the credit card companies' right to repayment is controlled solely by their contracts. I believe the credit card companies should pursue any contractual rights they have to collect from Bruno via the appropriate avenues—debt collectors and contract law—not bankruptcy law. Therefore, I respectfully dissent.